HUMBERTO MARTÍNEZ ARCELAY, CARMEN SOFÍA ARCELAY WALKER y MARÍA ISABEL ARCELAY WALKER, demandantes y recurridos, *v.* JUAN T. PEÑAGARÍCANO SOLER, BLANCA MARTÍNEZ DE PEÑAGARÍCANO y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos, demandados y peticionarios.

*Número:* CE-93-481      *Resuelto:* 18 de marzo de 1998

---

*Gabriel I. Peñagarícano,* abogado de la parte peticionaria; *Jorge L. Marzán Figueroa,* abogado de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El 13 de noviembre de 1990, el codemandante recurrido, Humberto Martínez Arcelay, presentó una demanda en la cual compareció *pro se.* En dicha demanda figuraban también como codemandantes las Sras. Carmen Sofía Arcelay Walker y María Isabel Arcelay Walker, madre y tía, respectivamente, del codemandado Martínez Arcelay. Estas últimas, sin embargo, no firmaron la misma, aunque sí hay alegaciones concretas en cuanto a ellas. Debe señalarse que el recurrido Martínez Arcelay no está admitido a ejercer la profesión legal en Puerto Rico.

La demanda radicada tiene como génesis los daños y perjuicios que, a consecuencia de un supuesto encarcelamiento ilegal, alegadamente sufrió el codemandante Martínez Arcelay al imputársele un delito de apropiación ilegal

agravada, delito por el cual se le condenó a cumplir una pena de diez (10) años de reclusión.([1]) En dicha acción aparecen como codemandados, además de los peticionarios Peñagarícano-Martínez, el Estado Libre Asociado, algunos departamentos de gobierno y varios funcionarios gubernamentales.

En cuanto al peticionario Peñagarícano Soler se refiere, el aquí recurrido alegó en su demanda que la acción de apropiación ilegal fue promovida por éste "a sabiendas de que dicha acción era ilegal y abusiva, por tratarse de una acción en cobro de dinero y no existiendo hecho criminal alguno". Demanda de 13 de noviembre de 1990, pág. 1. Alegó, además, Martínez Arcelay en su demanda que el Sr. Juan Tomás Peñagarícano utilizó la influencia económica y política que posee para inducir al Departamento de Justicia a instar dicha acción. Adujo, por último, el codemandante Martínez Arcelay que como consecuencia del encarcelamiento a que fue sometido "sufrió las injusticias de un sistema inhumano, donde se le maltrató, vejó, agredió y se le negó toda clase de derechos y ayuda". Íd., pág. 2.

Con respecto a las codemandantes, Sras. Carmen Sofía Arcelay Walker y María Isabel Arcelay Walker, se alega en el párrafo doce de la demanda que son dos (2) ancianas de setenta y cuatro (74) y setenta y nueve (79) años de edad, respectivamente, que convivían con el codemandante Martínez Arcelay, siendo éste su apoyo y sostén y que sufrieron durante el tiempo en que estuvo encarcelado el demandante. Además, en todas las partidas de daños se solicita indemnización económica para ambas.

La demanda se radicó el 13 de noviembre de 1990 en el antiguo Tribunal Superior, Sala de San Juan, un (1) día antes de cumplirse un (1) año desde que este Tribunal revocara la sentencia condenatoria y absolviera al codeman-

---

([1]) Según el mismo *codemandante*, estuvo encarcelado por espacio de quince (15) meses, hasta que este Foro revocó la sentencia condenatoria y lo absolvió el 14 de noviembre de 1989.

dante Martínez Arcelay del delito de apropiación ilegal. Luego de varios trámites procesales, el 23 de octubre de 1991 el tribunal ordenó al codemandante Martínez Arcelay que mostrara causa por la cual debía permitir que él se representara a sí mismo. En cuanto a las codemandantes señoras Arcelay Walker, el tribunal ordenó que mostraran causa por la cual el tribunal no debía desestimar la demanda en cuanto a ellas por no estar representadas por un abogado admitido al ejercicio de la abogacía en Puerto Rico.

El 2 de diciembre de 1991 compareció nuevamente el Sr. Humberto Martínez Arcelay, a nombre de las codemandantes, solicitando un plazo de sesenta (60) días para gestionar la representación legal de las mismas. En dicho escrito, el codemandante Martínez Arcelay alegó que las codemandantes se habían estado representando por derecho propio. El 23 de diciembre de 1991, el tribunal determinó que sólo las codemandantes podían determinar quién las representaría en el caso. El 2 de enero de 1992, el codemandante volvió a insistir en que se le conceda una prórroga para anunciar la representación legal de las codemandantes Arcelay Walker.

El 15 de abril de 1992 comparecieron, personalmente y por primera vez, las codemandantes Arcelay Walker, solicitando un plazo de sesenta (60) días para anunciar la representación legal de ambas. El tribunal de instancia les ordenó, con fecha de 22 de junio de 1992, que informaran en cinco (5) días su representación legal, dado que el plazo solicitado ya había vencido. Las codemandantes incumplieron la orden del tribunal y éste, mediante orden de 5 de agosto de 1992, les ordenó nuevamente que informaran el nombre del abogado que ostentaría su representación legal, esta vez, en un plazo fatal de treinta (30) días o se desestimaría su causa de acción con perjuicio. No obstante esta clara y rotunda orden, las codemandantes no cumplieron con la misma. No fue hasta el 21 de septiembre de 1992

que el Lcdo. Jorge L. Marzán Figueroa compareció, mediante moción, para asumir la representación legal de las codemandantes Arcelay Walker.

El 9 de febrero de 1993 el tribunal celebró una conferencia para ordenar y planificar el trámite futuro del caso. En dicha conferencia se concedió al licenciado Marzán Figueroa un término de veinte (20) días para someter un memorando de derecho para convencer al tribunal de que las codemandantes, a quienes él representaba, debían permanecer en el pleito. De igual manera, se concedió un término de treinta (30) días al licenciado Peñagarícano para replicar. El licenciado Marzán Figueroa no compareció dentro del término concedido.

Por su parte, el 8 de marzo de 1993 los demandados peticionarios presentaron una moción solicitando la desestimación de la causa de acción de las codemandantes Arcelay Walker. Alegaron que la causa de acción de éstas estaba prescrita, dado el hecho de que el periodo prescriptivo de un (1) año había comenzado a decursar desde el 14 de noviembre de 1989 y la demanda se presentó el 13 de noviembre de 1990, un (1) día antes de que venciera el término prescriptivo *sin que en la demanda aparecieran las codemandantes Arcelay Walker representadas por un abogado o sin que éstas hubieran comparecido por derecho propio.*

La parte demandada basó su argumento en el hecho de que la inclusión de las codemandantes fue indebida por haber comparecido el señor Martínez Arcelay por derecho propio y éste no estar admitido a la práctica de la abogacía. Se alegó, además, que la falta de la firma de las codemandantes tuvo el efecto de que el señor Martínez Arcelay compareciera por derecho propio y en representación de las codemandantes, lo que constituye una práctica ilegal de la abogacía. Alegaron, por lo tanto, que a todo efecto legal práctico, las codemandantes Martínez Arcelay no presentaron una reclamación adjudicable y mucho menos una que tuviera el efecto de interrumpir el periodo prescriptivo.

Alegaron, en resumen, que para la fecha en que el licenciado Marzán Figueroa asumió la representación legal de ellas, la causa de acción de éstas estaba ya prescrita y dicha asunción de representación no servía para resucitar una acción extinguida por el transcurso del tiempo, puesto que lo presentado por quien no tiene capacidad para ello no podía convalidarse luego.

Por su parte, las codemandantes Arcelay Walker contestaron la moción el 16 de marzo de 1993 y alegaron que "[l]a razón por la cual el co-demandante Humberto Martínez Arcelay se ha venido representando por su propio derecho, según él mismo expresara al Honorable Tribunal en la vista celebrada el día 9 de febrero de 1993, es que por la naturaleza de este caso, donde el principal demandado es un abogado, no consiguió ningún abogado que se interesase en asumir su representación en este caso". Réplica a moción de desestimación, pág. 2. En cuanto a la representación legal de las codemandantes, alegaron que "[m]ás difícil aún se le hacía conseguir representación legal a las codemandantes CARMEN SOFÍA ARCELAY WALKER y MARÍA ISABEL ARCELAY WALKER, quienes son dos ancianas de 76 y 81 años de edad, que no tienen los medios, los conocimientos ni la capacidad física para representarse por derecho propio". Íd. Continuaron alegando las codemandantes en su moción que "[e]l co-demandante Humberto Martínez Arcelay optó por presentar la demanda como aparece en los autos, como única alternativa para evitar que su madre y tía perdieran su derecho, hasta que el abogado que suscribe aceptó asumir la representación legal de ambas". Íd. Más adelante concluyen que "en el presente caso, dad[a] la dificultad en conseguir representación legal y la condición de las co-demandadas CARMEN SOFÍA ARCELAY WALKER y MARÍA ISABEL ARCELAY WALKER, la gestión efectuada por éstas a través de su hijo, que era lo único que podían hacer dentro de las circunstancias, interrumpió el término prescriptivo". Íd.

La parte demandada peticionaria presentó una dúplica el 24 de marzo de 1993. En la misma se reafirmó en sus alegaciones e indicó que ni la dificultad en procurar representación legal competente dentro del término prescriptivo ni la edad o condición económica de las reclamantes figuran entre las formas reconocidas restrictivamente por el derecho sustantivo como interruptoras de la prescripción.

La moción de desestimación fue declarada *no* ha lugar, de plano, por el antiguo Tribunal Superior, Hon. Dimas G. Padilla Bruno, el 25 de marzo de 1993. Inconforme, la parte demandada recurrió al Tribunal de Circuito de Apelaciones, Sección Norte, alegando que el tribunal de instancia había errado al convalidar actos reñidos con lo dispuesto en 4 L.P.R.A. sec. 740, los Arts. 1868 y 1873 del Código Civil, 31 L.P.R.A. secs. 5298 y 5303, y con la jurisprudencia interpretativa aplicable. Las codemandantes no comparecieron ante el Tribunal de Circuito de Apelaciones.

El Tribunal de Circuito de Apelaciones acogió el planteamiento de la parte peticionaria a los efectos de que el señor Martínez Arcelay, en el escrito de demanda que presentó el 13 de noviembre de 1990, solamente compareció por sí mismo y no como representante legal de las codemandantes Arcelay Walker. Sin embargo, dicho tribunal entendió que el hecho de que los nombres de las codemandantes Arcelay Walker figuraran en el epígrafe de la demanda y el hecho de que en el párrafo (12) de la misma hubiese una alegación concreta en cuanto a ellas, era suficiente para concluir que se trata de una demanda *pro se.*

Ello no obstante, el referido tribunal apelativo indicó que del expediente del caso no se podía concluir si las codemandantes incoaron sus respectivas reclamaciones por su propio derecho. A esos efectos, el tribunal apelativo sostuvo que la omisión de las firmas suscita la interrogante de si ellas fueron incluidas en la demanda por mandato de ellas o con la anuencia expresa de ambas, o si, por el contrario, su inclusión como codemandantes fue una iniciativa

del señor Martínez Arcelay sin haber consultado o solicitado la autorización de ellas. El mencionado tribunal apelativo concluyó que este hecho era importante porque, aun cuando el señor Martínez Arcelay hubiera podido incluirlas en su escrito de demanda, como codemandantes, y pudiera entenderse que los tres (3) comparecían a representar sus respectivos derechos, si lo que ocurrió fue que el señor Martínez Arcelay, por su cuenta y sin consultarlas, preparó y presentó el escrito, entonces tal acto es nulo e ineficaz como evento interruptor de la prescripción. *Por lo tanto, concluyó que lo jurídicamente procedente era que el tribunal de instancia celebrara una vista evidenciaria para determinar la intención de las codemandantes al momento de presentarse la demanda.*(²)

Inconforme, la parte demandada acudió ante este Tribunal, mediante recurso de *certiorari*, en revisión de la resolución del Tribunal de Circuito de Apelaciones, imputando a dicho tribunal haber errado:

> ...al sentenciar que la intención de las recurridas al momento en que se presentó la demanda por quien no [sic] le estaba autorizado el ejercicio de la profesión legal, era determinante a los efectos de la prescriptibilidad de la acción de éstas. Petición de *certiorari*, págs. 3–4.

Expedimos el auto; resolvemos.

## I

■ Es norma conocida que la figura de prescripción extintiva es materia sustantiva y no procesal, regida por las disposiciones del Código Civil como una de las formas de extinción de las obligaciones. El fundamento detrás de esta figura es el imperativo de castigar la inercia en el

---

(²) El foro apelativo determinó que en la eventualidad de que se pudiera concluir que las codemandantes Arcelay Walker habían presentado la demanda ellas mismas, el hecho de que no hubiesen firmado la demanda no era un defecto fatal que acarreara necesariamente la nulidad de la presentación de la acción.

ejercicio de los derechos y asegurar el "señorío de las cosas" al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones. M. Albaladejo, *Derecho Civil: introducción y parte general*, 10ma ed., Barcelona, Ed. Bosch, 1989, T. I, Vol. 2, Sec. 107, págs. 493–534; *Cintrón v. E.L.A.* 127 D.P.R. 582 (1990); *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550 (1987); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984).

■ La interrupción de la figura de prescripción se basa, por tanto, en la actividad o ruptura de aquella inercia. El fundamento reconocido de la interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. *Feliciano v. A.A.A.*, 93 D.P.R. 655, 660 (1966).

En el Art. 1873 del Código Civil de Puerto Rico, *supra*, se establecen las diferentes formas de interrumpir la prescripción. Estas son:

> La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

En cuanto al primer supuesto de interrupción de la prescripción, el ejercicio ante los tribunales, la eficacia de tal interrupción va a quedar sujeta a que se cumplan todos los requisitos de los actos interruptivos de esta figura, a saber: (a) oportunidad o tempestividad, es decir, que el ejercicio de la acción se realice antes de la consumación del plazo; (b) legitimación, según la cual el ejercicio corresponde al titular del derecho o acción; (c) identidad, que la acción ejercitada responda exactamente al derecho que está afectado por la prescripción, y (d) idoneidad del medio utilizado. *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995).

■ Los peticionarios Peñagarícano-Martínez alegan, en síntesis, que las codemandantes no cumplen con los primeros dos (2) requisitos. *Les asiste la razón.* En cuanto al

requisito de oportunidad, nos dice Scaevola que el hecho de accionar judicialmente interrumpe el término prescriptivo, pero es esencial que el ejercicio de tal acción haya sido *oportunamente presentado*, es decir, dentro del término prescriptivo.[3] La eficacia de este medio de interrupción se deriva del momento mismo de la interposición de la demanda aun cuando todavía no se haya emplazado, o se haya radicado la acción en un tribunal sin competencia o jurisdicción, o que se desista sin perjuicio del pleito y la misma subsiste hasta que termina definitivamente la acción ejercitada. *Feliciano v. A.A.A.*, supra; *Barrientos v. Gob. de la Capital*, 97 D.P.R. 552 (1969); *Moa v. E.L.A.*, 100 D.P.R. 573 (1972); *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623 (1982); *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137 (1994).

En cuanto al requisito de legitimidad, Scaevola entiende que los actos de interrupción *tienen que provenir necesariamente del titular del derecho o de la obligación reclamada.*[4] El concepto de titular de la acción no está limitado al acreedor original, sino que también incluye a su causahabiente, subrogados, cesionarios, representantes legales o mandatarios con facultades suficientes para realizar la interrupción. Véanse, además: *Vda. de Carlo v. Toro*, 99 D.P.R. 200, 216 (1970); *De Jesús v. Chardón*, 116 D.P.R. 238, 246 (1985).

Aplicando estos principios a los hechos concretos del caso ante nuestra consideración, encontramos que las co-demandantes Arcelay Walker *no* cumplen con los primeros dos (2) requisitos para interrumpir el término prescriptivo; *esto es, la acción judicial no fue presentada dentro del término prescriptivo y tampoco fue presentada por una persona legitimada para ello.* Veamos por qué.

---

[3] Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. AII, págs. 944–945.

[4] Scaevola, *op. cit.*, pág. 945.

## II

En el epígrafe de la demanda presentada en este caso aparecen como demandantes el Sr. Humberto Martínez Arcelay, Carmen Sofía Arcelay Walker y María Isabel Arcelay Walker. También se menciona a las codemandantes en la alegación Núm. 12 de la demanda, la cual lee de la siguiente manera:

> Las c[od]emandantes Carmen Sof[í]a Arcelay Walker y María Isabel Arcelay Walker son dos ancianas de 74 y 79 años respectivamente, las cuales convivían con el demandante siendo éste su apoyo y sostén y durante el tiempo que el demandante estuvo preso sufrieron toda clase de penurias, angustias y sufrimientos mentales, así como también durante todo el proceso en que estuvo envuelto el demandante. Demanda de 13 de noviembre de 1990, págs. 2–3.

Sin embargo, es de notar que en la comparecencia de la demanda solamente comparece el Sr. Humberto Martínez Arcelay "por sí y por derecho propio", sin mencionar a las codemandantes. También es sumamente relevante el hecho de que las codemandantes *no* firmaron la demanda, la cual sólo aparece firmada por el Sr. Humberto Martínez Arcelay.

Además, en todas las mociones de la parte demandante al tribunal, originalmente compareció el señor Martínez Arcelay por sí y por derecho propio. No fue hasta el 15 abril de 1992 que las codemandantes comparecieron, por primera vez, suscribiendo una moción solicitando un plazo adicional de sesenta (60) días para anunciar su representación legal. Ésta fue asumida por el licenciado Marzán Figueroa el 21 de septiembre de 1992, prácticamente dos (2) años luego de presentada la demanda en el caso.

Más importante aún es el hecho de que el propio licenciado Marzán Figueroa admite, en la Réplica a Moción de Desestimación de 16 de marzo de 1993, que las codemandantes Arcelay Walker no podían representarse por derecho propio y que todas las gestiones del caso fueron hechas

por el demandante, Sr. Humberto Martínez Arcelay. En dicho escrito el referido licenciado expresa lo siguiente:

La razón por la cual el co-demandante Humberto Martínez Arcelay se ha venido representando por su propio derecho, según él mismo expresara al Honorable Tribunal en la vista celebrada el día 9 de febrero de 1993, es que por la naturaleza de este caso, donde el principal demandado es un abogado, no consiguió ningún abogado que se interesase en asumir la representación en este caso.

*Más difícil aún se le hacía conseguir una representación legal a las co-demandantes CARMEN SOFIA ARCELAY WALKER y MARIA ISABEL ARCELAY WALKER, quienes son dos ancianas de 76 y 81 años de edad, que no tienen los medios, los conocimientos ni la capacidad física para representarse por derecho propio. El co-demandante Humberto Martínez Arcelay optó por presentar la demanda como aparece en los autos, como única alternativa para evitar que su madre y tía perdieran su derecho, hasta que el abogado que suscribe aceptó asumir la representación legal de ambas.*

. . . . . . . .

Entendemos muy respetuosamente que en el presente caso, dadas la[s] dificultade[s] de los demandantes en conseguir representación legal y la condición de las codemandantes CARMEN SOFIA ARCELAY WALKER y MARIA ISABEL ARCELAY WALKER, *la gestión efectuada por éstas a través de su hijo, que era lo único que podían hacer dentro de las circunstancias, interrumpió el término prescriptivo.* (Énfasis suplido.) Réplica a moción de desestimación, págs. 1–2.

Ello constituye una admisión tácita de que las codemandantes Arcelay Walker no comparecieron por derecho propio, ya que, como se admite en la moción, éstas no tenían los medios, los conocimientos o la capacidad para así hacerlo. En vista de lo anterior, el señor Martínez Arcelay optó por presentar la demanda incluyendo a las señoras Arcelay Walker, pero compareciendo únicamente él por derecho propio. El mismo licenciado Marzán Figueroa acepta que las supuestas gestiones de las codemandantes fueron efectuadas a través del señor Martínez Arcelay y no por ellas personalmente.

■ Por lo tanto, en este caso no hay duda de que el

señor Martínez Arcelay actuó en representación de las señoras Arcelay Walker. Nuestro ordenamiento, *por lo general*, admite la interposición de una reclamación por persona distinta a la interesada. A esos efectos, la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, provee lo siguiente:

> Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquélla para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. No se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, o se una al mismo, o se sustituya en lugar del promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho.

■ Cabe señalar que la interposición de una demanda por persona diferente al acreedor de la acción presupone necesariamente que dicha parte esté a su vez representada por un abogado autorizado a ejercer la abogacía en Puerto Rico. Si en este caso el señor Martínez Arcelay quería servir de mandatario o representante de las codemandantes, para que éstas no perdieran su causa de acción, era menester que estuviese representado por abogado. La razón para esto es que nuestro ordenamiento jurídico prohíbe que una persona particular represente a otros ante un tribunal, *acarreando dicha conducta sanciones criminales y la nulidad de lo actuado por dicha persona.*

■ A esos efectos, la Sec. 7 de la Ley Núm. 17 de 10 de junio de 1939 (4 L.P.R.A. sec. 740) dispone, en lo pertinente, que constituirá *delito menos grave* el que una persona que no sea abogado autorizado por la Corte Suprema de Puerto Rico se dedique al ejercicio de la profesión de

abogado, se anuncie como tal y/o gestione como agente judicial, *con excepción de sus propios asuntos,* algún asunto judicial o cuasi-judicial ante cualquier tribunal de justicia.(⁵)

Los estatutos que castigan el ejercicio no autorizado de la profesión se justifican como un ejercicio legítimo del poder de Estado para la protección de la ciudadanía contra personas no cualificadas o no diestras. *Pueblo v. Santaella,* 91 D.P.R. 350 (1964). Esta prohibición es tajante y contundente, sin dejar margen para excepciones. El efecto de violentar esta disposición es, entre otras, la nulidad de lo actuado por dicha persona.

Forzoso es concluir, por tanto, que la demanda que por derecho propio instó el señor Martínez Arcelay no tuvo el efecto de interrumpir la causa de acción de las señoras Arcelay Walker, en vista de que lo efectuado por el señor Martínez Arcelay no tiene efecto jurídico con respecto a la acción de las codemandantes. Para el 15 de abril de 1992, fecha en que éstas comparecieron por primera vez, ya había pasado un (1) año y seis (6) meses luego de expirar el término prescriptivo de la acción. Bajo tales circunstancias, es inevitable concluir que la causa de acción de las codemandantes *estaba prescrita.*

### III

El Tribunal de Circuito de Apelaciones erró al circunscribir su análisis al requisito de la firma en las demandas y decidir que la omisión de las firmas en este caso no constituía un requisito infranqueable en una demanda *pro se.* El tribunal no tomó en cuenta la demás evidencia que obra en el expediente del caso, indicativa la misma de que las co-

---

(⁵) Véase, además, el Art. 12 de la Ley Núm. 43 de 14 de mayo de 1932 (4 L.P.R.A. sec. 782), en el cual se impone una multa no menor de cien dólares ($100) o prisión por un período no menor de dos (2) meses, o ambas penas, a toda persona que ejerza ilegalmente la profesión de abogado.

demandantes no comparecieron en la demanda y que todas sus alegadas gestiones fueron efectuadas ineficazmente a través del codemandante Martínez Arcelay con anterioridad al 15 de abril de 1992.

En vista de todo lo anterior, *concluimos que la causa de acción de las codemandantes Arcelay Walker está prescrita. Por los fundamentos antes expuestos se dictará sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones y se devuelve el caso al tribunal de instancia para procedimientos ulteriores compatibles con lo aquí expresado.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Fuster Berlingeri. Los Jueces Asociados Señores Negrón García y Corrada Del Río se inhibieron.

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Fuster Berlingeri.

Por las razones que esbozamos a continuación, disentimos de la mayoría del Tribunal. Entendemos que la acción de las codemandantes Doña Carmen Sofía y Doña María Isabel Arcelay Walker no está prescrita y, por lo tanto, no debe ser desestimada.

A continuación reseñaremos brevemente los hechos que dieron lugar a la controversia.

I

El 13 de noviembre de 1990, se presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda para reclamar por daños y perjuicios contra, entre otros, Juan T. Peñagarícano Soler, su esposa, Jane Doe,

y la sociedad de bienes gananciales compuesta por ambos (en adelante el demandado Peñagarícano).([1])

En el epígrafe aparecen como demandantes Humberto Martínez Arcelay, Carmen Sofía Arcelay Walker y María Isabel Arcelay Walker. La demanda comienza indicando que "[c]omparece el demandante, por sí y por derecho propio, y ... expone alega y solicita", y está firmada únicamente por el demandante Martínez Arcelay. Éste no está autorizado a ejercer la profesión legal en Puerto Rico. Cabe señalar, además, que en la súplica sólo se hace mención a "el demandante".

De la demanda surge que la única alegación específica que se hace con respecto a las otras dos (2) codemandantes, Doña Carmen Sofía y Doña María Isabel, madre y tía respectivamente del codemandante Martínez Arcelay, es la Núm. 12 que dispone lo siguiente:

> Las c[od]emandantes Carmen Sofía Arcelay Walker y María Isabel Arcelay Walker son dos ancianas de 74 y 79 años de edad respectivamente, las cuales convivían con el demandante siendo éste su apoyo y sostén y durante el tiempo que el demandante estuvo preso sufrieron toda clase de penurias, angustias y sufrimientos mentales, así como también durante todo proceso en que estuvo envuelto el demandante.

El 12 de febrero de 1991, el demandado Peñagarícano presentó una moción titulada Dúplica y Moción al Amparo de la Regla 8.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, mediante la cual solicitó que se ordenara a las codemandantes Arcelay Walker contratar un abogado para que las representase, y se les apercibiera que de no hacerlo se archivarían con perjuicio sus causas de acción. Luego de varias mociones relacionadas con el descubrimiento de prueba, el 21 de febrero el demandado Peñagarícano presentó una moción para solicitar una sentencia sumaria, en la cual reiteró su solicitud de que se le ordenase a las codemandantes Arcelay Walker contratar abogado o, en la

---

([1]) Las causas de acción contra los otros demandados fueron desestimadas.

alternativa, que comparecieran por derecho propio. Al otro día, el codemandante Martínez Arcelay presentó una moción informativa en la cual expresó que comparecía asumiendo su propia representación legal y que, en su momento o cuando el tribunal así lo dispusiera, anunciaría quien representaría a las codemandantes Arcelay Walker.

El 23 de octubre el tribunal ordenó a la parte demandante mostrar causa por la cual no debería desestimar la causa de acción de las codemandantes Arcelay Walker por no estar éstas representadas por abogado admitido a la práctica de la profesión legal en Puerto Rico. El 2 de diciembre el codemandante Martínez Arcelay compareció y le informó al tribunal que estaba gestionando representación legal para las codemandantes. Solicitó un término de sesenta (60) días para llevar a cabo estas gestiones.

El 16 de diciembre el codemandante Martínez Arcelay presentó una moción para oponerse a la sentencia sumaria, en la cual reiteró que comparecía por derecho propio al igual que las codemandantes Arcelay Walker y que se estaba gestionando representación legal para éstas. Con esta moción se acompañaron dos (2) declaraciones juradas, una de cada una de las codemandantes Arcelay Walker.(2) Luego de varias órdenes y mociones, el 15 de abril de 1992 las codemandantes Arcelay Walker comparecieron por derecho propio y firmaron una moción en la cual le solicitaron al tribunal que les permitiera unirse a la contestación oponiéndose a la solicitud de sentencia sumaria presentada por el codemandante Martínez Arcelay. Además, solicitaron el plazo de sesenta (60) días para anunciar su representación legal. El 5 de agosto el foro de instancia emitió una orden en la que le concedía a éstas un término fatal de treinta (30) días para anunciar su representación legal. Se les apercibió de que si no cumplían con lo ordenado, dentro de este término, se desestimarían con perjuicio sus causas

---

(2) De las declaraciones juradas se puede colegir con meridiana claridad que las codemandantes Arcelay Walker apenas pudieron firmarlas.

de acción. Ese mismo día el tribunal emitió también una resolución para denegar la moción de sentencia sumaria del demandado Peñagarícano y resolver que la acción no estaba prescrita. La resolución y la orden fueron notificadas el 19 de agosto.

El 21 de septiembre de 1992, el Lcdo. Jorge L. Marzán Figueroa compareció, asumiendo la representación legal de las codemandantes Arcelay Walker.(³) El 7 de octubre de 1992 el tribunal aceptó dicha representación legal. Tras una serie de trámites procesales, el 9 de febrero de 1993 el tribunal le concedió un término al licenciado Marzán Figueroa para que convenciera al tribunal de que las codemandantes Arcelay Walker deberían permanecer como partes en el pleito.(⁴)

El 23 de febrero de 1993 el demandado Peñagarícano suscribió un escrito en el cual, entre las defensas afirmativas planteadas, incluyó la de prescripción de las causas de acción de las codemandantes Arcelay Walker. Aparentemente se basó en la teoría de que el codemandante que había firmado la demanda no estaba autorizado a ejercer la abogacía y que, por lo tanto, la presentación de la demanda no tuvo el efecto de interrumpir el término prescriptivo.

Utilizando esta misma teoría, el 16 de marzo de 1993 el demandado Peñagarícano presentó una moción de desestimación, en la cual alegó que las causas de acción de las codemandantes Arcelay Walker estaban prescritas. El 18 de marzo compareció el licenciado Marzán Figueroa para oponerse a la desestimación. Alegó que no pudo cumplir estrictamente con el término concedido por el tribunal para asumir la representación legal de las codemandantes Arcelay Walker, porque estuvo enfermo, recluido primero en su

---

(³) El término concedido por el tribunal venció el viernes 18 de septiembre. El licenciado Marzán Figueroa presentó la moción y asumió la representación legal el próximo día hábil, el lunes 21 de septiembre.

(⁴) Véase la Minuta de 9 de febrero de 1993, notificada el 18 de febrero.

hogar y luego en el Hospital San Pablo.([5]) Expresó, además, que por la naturaleza del caso, en el cual el principal demandado es un abogado, al codemandante Martínez Arcelay se le había hecho muy difícil conseguir representación legal. Esto lo obligó a representarse por derecho propio. Añadió que igual problema confrontaron las codemandantes, Arcelay Walker, madre y tía respectivamente del codemandante Martínez Arcelay. Por último, indicó que las codemandantes Arcelay Walker "no tienen [ni] los medios, [ni] los conocimientos ni la capacidad física para representarse por derecho propio", y que para que éstas no perdieran sus derechos fue que el codemandante optó por incluirlas en la demanda. Luego de una serie de trámites procesales, el 25 de marzo de 1993 el tribunal denegó la moción de desestimación.

Inconforme con esta determinación, el 5 de abril de 1993 el demandado Peñagarícano presentó ante el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) una petición de *certiorari*. Alegó como único error que el tribunal de instancia denegara la solicitud de desestimación por prescripción. El 30 de agosto de 1993 el Tribunal de Circuito emitió sentencia en la que revocó la resolución recurrida y devolvió el caso a instancia.([6])

Inconforme con esta determinación, el demandado Peñagarícano presentó un recurso de *certiorari* ante nos para alegar la comisión del error siguiente:

Erró el Tribunal de Circuito de Apelaciones al sentenciar que

---

([5]) Con la moción acompañó un certificado médico.

([6]) El Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) ordenó al foro de instancia celebrar "una vista evidenciaria para determinar si las señoras Arcelay Walker pueden ser consideradas como demandantes *pro se*, para lo cual será necesario esclarecer el hecho de si fueron incluidas en la demanda por mandato o con la anuencia expresa de ambas o si, por el contrario, su inclusión como demandantes fue una iniciativa de Martínez Arcelay sin haberlo consultado o haber sido autorizado por ellas. De determinarse que ellas demandaron *pro se*, el tribunal procederá a declarar no haber lugar a la moción de desestimación de la parte demandada-peticionaria pues la omisión de sus firmas no puede tenerse como defecto fatal. De lo contrario dictará sentencia parcial desestimando por prescripción las reclamaciones de las señoras Arcelay Walker".

la intención de las recurridas al momento en que se presentó la demanda por quien no le estaba autorizado el ejercicio de la profesión legal, era determinante a los efectos de la prescriptibilidad de la acción de éstas.

Decidimos revisar y expedimos el recurso.

## II

Reiteradamente hemos resuelto que la prescripción extintiva es una institución civil de derecho sustantivo que se rige por el Código Civil. Constituye una forma de extinguirse el derecho por el transcurso de un periodo de tiempo estatutariamente determinado sin que el titular del derecho lo reclame. "Cuando finaliza la acción dirigida a hacer valer el derecho, tan sólo subsiste entre las partes una obligación natural o moral no reclamable por la vía judicial." *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137, 142 (1994); *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995); *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990); *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550 (1987); *Febo Ortega v. Tribunal Superior*, 102 D.P.R. 405 (1974).

El principal fundamento de la prescripción extintiva de las acciones es castigar la inercia y desidia del acreedor en el ejercicio de los derechos y poner fin a la posibilidad de litigios eternos o por un periodo de tiempo irrazonable. *García Aponte et al. v. E.L.A. et al.*, supra; *Cintrón v. E.L.A.*, supra; *Silva Wiscovich v. Weber Dental Mfg. Co.*, supra; *Febo Ortega v. Tribunal Superior*, supra. También hemos expresado que "[l]a prescripción sirve a la paz jurídica, a la seguridad general y al bien público". *Galib Frangie v. El Vocero de P.R.*, supra, pág. 566. Véase A. Orozco Pardo, *La interrupción de la prescripción extintiva en el Derecho Civil*, Granada, Ed. U. de Granada, 1986, pág. 56.

Los términos prescriptivos pueden interrumpirse mediante la manifestación de una voluntad clara e inequívoca de conservar el derecho que sea objeto de la presunción de

abandono. El Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, establece que "[l]a prescripción de las acciones se interrumpe por el ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor".

En cuanto a la interrupción de la prescripción por el ejercicio de la acción ante los tribunales, "el acto interruptor es el acto de iniciación del procedimiento judicial, *de acuerdo a las leyes procesales. ...* [D]e manera que puede entenderse producida la interrupción siempre que el resultado perseguido con la demanda ponga de manifiesto, ante el demandado y ante los órganos jurisdiccionales, la voluntad de ejercitar el derecho". (Énfasis suplido.) *Comentario del Código Civil*, T. II, pág. 2170. Como podrá observarse, en esta modalidad de la interrupción prescriptiva se entrelazan la doctrina civilista de la institución de la prescripción con las normas procesales provenientes del derecho común norteamericano, específicamente de las Reglas de Procedimiento Civil federal. Por lo tanto, para determinar cuándo se ha iniciado una acción y cuándo se entiende interrumpido el término prescriptivo, debemos recurrir a las reglas procesales que rigen la situación particular del caso ante la consideración del tribunal. En esta área del derecho hemos reconocido que "[l]a distinción entre lo sustantivo y lo procesal es a menudo tenue y borrosa". *Febo Ortega v. Tribunal Superior*, supra, pág. 407.

Con relación a la interrupción de la prescripción por interpelación judicial, hemos resuelto que: la presentación de una demanda de la cual el demandante desiste voluntariamente, sin perjuicio, antes de que los demandados fueran emplazados, interrumpe el término prescriptivo a los fines de la prescripción extintiva, *Silva Wiscovich v. Weber Dental Mfg. Co.*, supra; la interrupción beneficia también al demandado reconviniente cuando la acción dimana de los mismos hechos que motivaron el inicio del litigio, *Febo Ortega v. Tribunal Superior*, supra; se interrumpe el término

al presentarse la demanda y no al efectuarse el emplazamiento; también se interrumpe aunque la acción haya sido interpuesta en un foro sin jurisdicción o competencia, y la interrupción dura hasta que termina definitivamente la gestión judicial. *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623 (1982); *Moa v. E.L.A.*, 100 D.P.R. 573 (1972); *Feliciano v. A.A.A.*, 93 D.P.R. 655 (1966).

Hay ciertas reglas procesales que por su naturaleza son de especial importancia para cualquier análisis de la interrupción de la prescripción por gestión judicial. La Regla 11 de Procedimiento Civil federal, 28 U.S.C., establece cuándo comienza la acción judicial, al disponer que ésta se inicia con la presentación de la demanda. La Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que proviene de la Regla 11 de Procedimiento Civil federal, 28 U.S.C., a su vez dispone sobre la firma de los escritos por un abogado o por la parte, si ésta no estuviere representada por abogado. En el ámbito federal y según la cita Regla 11, la falta de la firma en un documento judicial siempre se ha considerado un defecto de forma susceptible a ser enmendado. En 1983 se enmendó la Regla 11 federal, *supra,* para incorporar específicamente a dicha regla la práctica imperante en el foro federal de considerar la falta de firma como un defecto de forma y añadir la advertencia de que luego de habérsele llamado la atención de la falta de firma al promovente, la omisión debía ser subsanada prontamente. 5A *Wright and Miller, Federal Practice and Procedure: Civil 2d* Secs. 1331 y 1336 (1990). Esta interpretación armoniza con la filosofía procesal imperante, tanto en la jurisdicción federal como en la nuestra, de que la finalidad de las reglas procesales es hacer viable la consecución de los derechos sustantivos de las partes de forma justa, rápida y económica, y que las reclamaciones deben dilucidarse en los méritos, evitando que los casos sean resueltos por meros tecnicismos procesales. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141

D.P.R. 237 (1996); *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 D.P.R. 115 (1992); *J.R.T. v. Aut. de Comunicaciones,* 110 D.P.R. 879, 884 (1981).

Respecto a la comparecencia de una parte por derecho propio y la firma de las alegaciones, resulta importante tomar en consideración el hecho de que en nuestra jurisdicción "[n]inguna persona que no sea abogado autorizado por la Corte Suprema de Puerto Rico podrá dedicarse al ejercicio de la profesión de abogado, ni anunciarse como tal, ni como agente judicial, *ni gestionar, con excepción de sus asuntos propios, ningún asunto judicial o cuasi judicial ante cualquier tribunal judicial"*. (Énfasis suplido.) Sec. 7 de la Ley Núm. 17 de 10 de junio de 1939, según enmendada, 4 L.P.R.A. sec. 740.[7]

En *B. Muñoz, Inc. v. Prod. Puertorriqueña,* 109 D.P.R. 825 (1980), tuvimos la oportunidad, dentro del contexto de un caso civil, de examinar esta disposición, en conjunto con la Regla 9 de Procedimiento Civil, *supra,* sobre la firma de los escritos en los tribunales. El caso versa sobre la representación de una corporación ante los tribunales por uno de sus oficiales. En cuanto a los efectos de esta actuación para la corporación, aunque reconocimos que "[l]a norma prevaleciente promulga la nulidad de toda actuación, inclusive cualquier sentencia que haya obtenido la corporación cuando ésta es demandante y la continuación de los procedimientos en rebeldía cuando es demandada", íd., pág. 830, dadas las circunstancias específicas del caso, determinamos que lo más justo era dejar sin efecto la sentencia que había recaído y conceder a la corporación la opor-

---

[7] La Sec. 7 de la Ley Núm. 17 de 10 de junio de 1939 dispone "que la infracción de cualquiera de las disposiciones contenidas en esta sección, se considerará y castigará como un delito menos grave; Disponiéndose, además, que se considerará como *malpractice* y como causa suficiente para desaforo el hecho de cualquier abogado autorizar con su firma escrituras, alegaciones y documentos en que dicho abogado no sea *bona fide* el verdadero abogado o notario del asunto o sustituto de dicho abogado o notario; y Disponiéndose, también, que los fiscales tendrán el deber de investigar las infracciones de esta sección, y en caso de encontrarse justa causa, podrán solicitar del Tribunal Supremo el desaforo temporal o permanente de cualquier abogado o notario que hubiere infringido las anteriores disposiciones". 4 L.P.R.A. sec. 740.

tunidad de consignar y figurar para el expediente la comparecencia de un abogado. Ordenamos, además, al tribunal de instancia que emitiera la sentencia en los méritos que hubiera dictado de no haber resuelto que la ausencia de abogado corporativo se lo impedía. Las circunstancias que consideramos ameritaban hacer esta excepción a la regla general fueron: (1) que estábamos pautando derecho por primera vez, y (2) que en los autos aparecía que el pleito fue llevado, en cierto modo, satisfactoriamente por el oficial, sin que éste incurriera en conducta lesiva alguna hacia las partes o transgrediera intereses importantes del tribunal o de la sociedad en general.

Otra regla que hay que tomar en consideración al analizar si ha habido o no una interrupción del término prescriptivo por el ejercicio de una acción judicial es la Regla 13.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ésta corresponde a la Regla 15(c) de Procedimiento Civil federal, 28 U.S.C., y establece las circunstancias en las cuales una enmienda a la demanda se retrotrae a la fecha cuando se presentó la alegación original, es decir, al inicio del pleito. De haberse interpuesto la demanda original en tiempo, la nueva reclamación presentada mediante enmienda no estaría prescrita.[8] Esta regla establece las condiciones que deben darse si lo que el demandante pretende es traer mediante enmienda una nueva reclamación o causa de acción o un nuevo demandado y que para todos los efectos procesales y prescriptivos se considere como si esta nueva reclamación o causa de acción o este nuevo demandado, hubiese

---

[8] La Regla 13.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone lo siguiente:

"Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, acto, omisión o evento expuesto en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original. Una enmienda para sustituir a la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, en adición a cumplirse con el requisito anterior, y dentro del término prescriptivo, la parte que se trae mediante enmienda (1) tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedido de defenderse en los méritos, y (2) de no haber sido por error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra.

sido parte de la demanda original al iniciarse el pleito. Al amparo de la Regla 13.3 de Procedimiento Civil, *supra*, la fecha para determinar si hubo o no una interrupción judicial de la prescripción sería la de la presentación de la demanda original. *Moa v. E.L.A.*, supra.

Por último debe considerarse la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que proviene de la Regla 17(a) de Procedimiento Civil federal, 28 U.S.C.[9] Esta regla establece, como norma general, que todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama. El propósito fundamental de esta norma es evitar la posibilidad de que el demandado tenga que enfrentarse a una acción similar interpuesta por quien tiene el derecho en ley y no fue parte en el pleito original, y asegurarse de que la determinación que tome el tribunal tendrá el efecto de cosa juzgada. *Prevor-Mayorsohn Caribbean v. Puerto Rico Marine*, 620 F.2d 1 (1er Cir. 1980). Ahora bien, la propia regla establece unas excepciones a esta norma general. Categóricamente dispone que "[n]o se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un término razonable para que la persona con derecho ratifique la radicación del pleito, o se una al mismo, o se sustituya en lugar del promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho". (Énfasis

---

[9] La Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que:

"Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquélla para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico, para beneficio de otra persona. *No se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, o se una al mismo, o se sustituya en el lugar del promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho.*" (Énfasis suplido.)

suprimido.) *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3, 11 (1993), citado la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El propósito de la última parte de esta regla es evitar la pérdida de un derecho y una injusticia. Por lo tanto, se permite que mediante enmienda se ratifique, una o sustituya al titular del derecho y que la enmienda se retrotraiga al inicio del pleito, aun cuando el término prescriptivo ya hubiese vencido al momento de presentarse la enmienda. Esta disposición refleja la política pública que consistentemente hemos adoptado de liberalidad en la interpretación y aplicación de las reglas y normas procesales a favor de que los casos se resuelvan en los méritos. Un error en la etapa de las alegaciones no debe de tener el efecto o la consecuencia de que se desestime una demanda, si éste es susceptible de ser corregido. *Wright and Miller*, supra, Vol. 6A, Secs. 1543 y 1555.

## III

El caso de autos requiere que comencemos analizando la demanda presentada contra el codemandado Peñagarícano. Al hacerlo debemos tomar en consideración que las alegaciones son sencillas y sucintas, ya que su propósito es simplemente notificar a la parte demandada de la reclamación en su contra para que ésta pueda comparecer a defenderse si así lo desea. Las alegaciones deben interpretarse conjuntamente, de la manera más favorable para el promovente, utilizando el epígrafe y la súplica, los cuales no forman parte de las alegaciones, para ayudar en su interpretación. *Moa v. E.L.A.*, supra.

En el caso ante nuestra consideración, en el epígrafe de la demanda aparecen como demandantes el codemandante Martínez Arcelay y las codemandantes Arcelay Walker. Sin embargo, al comienzo de la demanda se hace constar, en singular, que el demandante comparece por sí y por derecho propio y en la súplica también se hace mención al de-

mandante en singular. La demanda sólo aparece firmada por el codemandante Martínez Arcelay. En cuanto a las alegaciones, sólo hay una, la Núm. 12, que concierne a la reclamación de las codemandantes Arcelay Walker.

A la luz de los hechos anteriormente reseñados e interpretando la demanda de la forma más favorable para las promoventes, los supuestos procesales que mejor se ajustan a éstos son los que a continuación pasamos a exponer. O las codemandantes Arcelay Walker comparecieron por derecho propio y no firmaron la demanda o en la demanda que el codemandante Martínez Arcelay presentó, éste, además de su propio derecho, reclamó también el derecho que le pertenecía a las codemandantes Arcelay Walker propiamente, para que no lo perdieran por prescripción.([10])

Tomando en consideración las normas antes expuestas, veamos las consecuencias de cada uno de estos supuestos. Si entendemos que lo que ocurrió fue que las codemandantes Arcelay Walker no firmaron la demanda y su intención fue representarse por derecho propio —*pro se*— entonces estamos ante un simple error de forma. Éste quedó subsanado cuando las codemandantes Arcelay Walker comparecieron por derecho propio, solicitando un término para conseguir representación legal y permiso para unirse a la oposición a la moción de desestimación presentada por el codemandante Martínez Arcelay, o cuando compareció el licenciado Marzán Figueroa asumiendo la representación legal de éstas.

De otra parte, si lo que se pretendió fue que el codemandante Martínez Arcelay reclamara los derechos que le pertenecen propiamente a las codemandantes Arcelay Walker, para que éstas, por lo difícil que había resultado obtener

---

([10]) Aunque también se podría arguir que el codemandante Martínez Arcelay pretendió representar a las codemandantes Arcelay Walker, al examinar el expediente encontramos que tanto en la demanda como en las mociones presentadas sobre este particular, en todo momento éste hace mención de que sólo se está representando él propiamente; que estaba buscando representación legal para las codemandantes, su madre y su tía, y que su intención era que éstas no perdiesen su reclamación por prescripción.

representación legal, no los perdieran por prescripción, entonces lo que procedía era que éstas comparecieran para ratificar o unir se a la reclamación interpuesta por el codemandante Martínez Arcelay del derecho que a ellas les correspondía. Esto lo hicieron, como expresáramos anteriormente, al comparecer por derecho propio y mediante representación legal, dando su anuencia a lo reclamado por el codemandante Martínez Arcelay en la demanda. A tenor de lo dispuesto en la Regla 15.1 de Procedimiento Civil, *supra*, la ratificación de la reclamación se retrotrajo al momento de la presentación de la demanda original. Habiéndose presentado ésta en tiempo, la reclamación de las codemandantes Arcelay Walker también estaba en tiempo. Entendemos que se sirven mejor los intereses de la justicia si en este caso, en el cual debido a su naturaleza (una demanda por daños y perjuicios contra un prominente abogado) le ha sido sumamente difícil a las codemandantes obtener representación legal, se permite a las codemandantes Arcelay Walker continuar con la demanda representadas por el licenciado Marzán Figueroa para que ésta se dilucide en los méritos.

Por todo lo antes expuesto, disentimos de lo que hoy resuelve la mayoría del Tribunal. Entendemos que lo que procede es modificar la sentencia dictada por el Tribunal de Circuito y devolver el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.