CC-98-34                                                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Edwin R. García Díaz<br>　　Recurrente<br><br>　　V.<br><br>Darex Puerto Rico, Inc.;<br>W.R. Grace & Compay<br><br>　　Recurrido | Certiorari<br><br>99TSPR79 |

Número del Caso: CC-98-0034

Abogado de la Parte Recurrente:　　Lcdo. Frank Zorrilla Maldonado

Abogados de la Parte Recurrida:　　Lcda. Anita Montaner Sevillano
　　　　　　　　　　　　　　　　　　Mc Connell & Valdes

Tribunal de Instancia: Superior, Sala de Caguas

Juez del Tribunal de Primera Instancia: Hon. Jesús Manuel Rosario Félix

Tribunal de Circuito de Apelaciones:　　Circuito Regional VI
　　　　　　　　　　　　　　　　　　　Caguas-Humacao

Juez Ponente: Hon. Brau Ramírez

Fecha: 5/20/1999

Materia: Discrimen

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Edwin R. García Díaz

   Demandante y Recurrente

   v.
                                        CC-98-34        Certiorari

Darex Puerto Rico, Inc.;
W.R. Grace & Company

   Demandado y Recurridos



Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 20 de mayo de 1999.

¿Puede un patrono despedir a un obrero durante los doce (12) meses de reserva de empleo que establece el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, mientras éste continúa inhabilitado, y bajo tratamiento en el Fondo del Seguro del Estado?  Tras analizar el Art. 5a y nuestra legislación laboral vigente, determinamos que durante este periodo el patrono está obligado a reservar el empleo del obrero y no puede despedirlo a menos que tenga justa causa.

I

El Sr. Edwin García (en adelante "el obrero") comenzó a trabajar para Darex Puerto Rico Inc. (en adelante "el patrono") en la posición de chofer y técnico en agosto de 1981.  El 26 de junio de 1995,

el obrero sufrió un accidente del trabajo, lesionándose la cintura y el cuello mientras montaba un carrete ("reel") en un tanque. Tras el accidente se reportó al Fondo del Seguro del Estado (en adelante "el Fondo") el cual le suministró tratamiento y le ordenó que no trabajara.

Apenas cinco días después de comenzar tratamientos bajo el Fondo, el obrero fue despedido de su empleo mediante una carta suscrita por el Sr. Patrick McLaughlin, Gerente Regional del patrono demandado. Según dicha carta el despido se debió a una reorganización de personal provocada por pérdidas en el negocio. Al momento del despido el obrero era el empleado de mayor antigüedad dentro de su clasificación ocupacional.[1]

Así las cosas, el 12 de julio de 1996 el obrero, aún bajo tratamiento en el Fondo,[2] instó la presente demanda ante el Tribunal de Primera Instancia contra su patrono y W.R. Grace & Company.[3] Alegó que había sido ilegalmente despedido, en violación tanto del Artículo 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7 (en adelante "Art. 5a"), como de la Ley Núm. 44, la cual provee un remedio contra el discrimen por impedimentos físicos o mentales, 1 L.P.R.A. secs. 501 y ss, supl. 1998, (en adelante "Ley Núm. 44"). También alegó que su despido había constituido discrimen por edad conforme a la Ley Núm 100 de 29 de junio de 1969, 29 L.P.R.A. secs. 146 y ss. El patrono contestó la demanda, negando las alegaciones.

Tras varios incidentes procesales, el obrero presentó moción de sentencia sumaria parcial solicitando se declarara con lugar su reclamación bajo el Art. 5a de la Ley de Compensaciones por Accidentes

---

[1] El obrero tenía una antigüedad de 13.916 años de servicios y su salario era de $30,550.00 al año.

[2] El obrero continuó bajo tratamiento en el Fondo hasta el 4 de octubre de 1996.

[3] W.R. Grace & Company es la compañía matriz de Darex.

del Trabajo.  El patrono se opuso[4] a lo anterior y solicitó, a su vez, la desestimación sumaria de las causas de acción bajo el Art. 5a[5] de la Ley de Compensaciones por Accidentes del Trabajo, y de la reclamación bajo la Ley Núm. 44.

El Tribunal de Primera Instancia emitió Sentencia Sumaria Parcial, determinando que el despido fue injustificado por ser contrario a la reserva de empleo que provee el Art. 5a.  Determinó que el obrero debía ser compensado con aquellos beneficios a los que hubiera tenido derecho de no haber sido despedido y obligó al patrono a pagarle el dinero adeudado por concepto del seguro por incapacidad a corto y largo plazo contenido en el Manual de Empleados de la Empresa.[6]  El Tribunal dispuso que las demás causas de acción incluyendo los daños al amparo del Art. 5a serían adjudicados posteriormente.  Inconforme, el patrono acudió al Tribunal de Circuito de Apelaciones.

El Tribunal de Circuito de Apelaciones modificó la Sentencia Sumaria Parcial del Tribunal de Primera Instancia limitando el remedio concedido por dicho foro a los beneficios a los que el obrero hubiera tenido derecho durante el plazo de doce meses que contempla el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo para la reserva de su empleo.  También ordenó la desestimación de la reclamación presentada por el obrero bajo la Ley Núm. 44.

Inconforme con esta determinación, el obrero acude ante nos y señala que erró el Tribunal de Circuito de Apelaciones al reducir el

---

[4] El patrono alegó que existía un genuina controversia de hechos en cuanto a la existencia de justa causa para el despido del obrero que impedía que se pudiese dictar sentencia sumaria.

[5] Alegaba el patrono que al no haber sido dado de alta por el Fondo dentro de los doce meses de reserva el obrero no tenía derecho a remedio alguno bajo el Art. 5a.

[6] Según determinó el Tribunal de Primera Instancia este remedio incluía 26 semanas de sueldo completo por concepto de seguro por incapacidad a corto plazo, y el seguro por incapacidad a largo plazo desde la terminación del seguro a corto plazo hasta el presente y mientras continuara incapacitado conforme el Manual de la Empresa, descontando la pensión del Seguro Social del seguro por incapacidad a largo plazo.

remedio que le había sido concedido por el Tribunal de Primera Instancia en virtud del Artículo 5a[7].

Por su parte, en su comparecencia ante nos, el patrono señala que erró el Tribunal de Circuito de Apelaciones al resolver que García tenía una causa de acción bajo el Artículo 5a de la Ley de Compensaciones por Accidentes del Trabajo. Alega el patrono que el Art. 5a no cobija al obrero ya que éste no satisfizo los requisitos establecidos en dicho artículo para solicitar reinstalación.

A la luz de los errores señalados nos corresponde resolver principalmente si el Artículo 5a prohíbe, absolutamente, el despido de un empleado durante el periodo de reserva de 12 meses. Veamos.

## II

La Constitución del Estado Libre Asociado de Puerto Rico en su Carta de Derechos, Art. II, Sec. 16, reconoce el derecho de todo trabajador a estar protegido contra riesgos a su salud en su trabajo o empleo. "Este derecho puede entenderse incluye el que se provea al trabajador de un sistema de seguridad social por lesiones en el empleo".[8] La Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 del 18 de abril de 1935, según enmendada, 11 L.P.R.A. secs. 1 y ss., crea este sistema de seguridad social.

Dicha ley establece el deber de los patronos de compensar a sus empleados lesionados o accidentados en el curso de su empleo y establece un sistema de seguros y un método para proceder con las

---

[7] En el caso de autos el obrero también alegó que una razón de su despido había sido la de impedirle tener acceso al Seguro por Incapacidad a Largo Plazo que establecía el Manual de Empleados de Darex y Grace por lo cual el tiene derecho a que, como remedio, se le concediesen estos beneficios. Sin embargo el patrono aduce correctamente, que de tener razón el obrero, en cuanto a la razón del despido, este tenía que iniciar una acción en el Tribunal Federal bajo la sección 510 la ley federal E.R.I.S.A., 29 U.S.C. sec. 1140, que rige este tipo de seguro. Esta ley exige que cualquier reclamación judicial que en sus alegaciones implique una violación a E.R.I.S.A. conforme la sección 510 será de jurisdicción exclusiva de las cortes federales. 29 U.S.C. sec. 1132(e)(1). Véase, Ingersoll-Rand Company v. Mc. Cledon, 498 U.S. 133 (1990).

[8] Ley Núm. 83 del 29 de octubre de 1992, Art. 1a, 11 L.P.R.A. sec. 1a.

reclamaciones.  Véase, Ortiz Pérez v. FSE, res. el 31 de octubre de 1994, 137 D.P.R. ____ (1994).

Por medio de esta ley, tanto los patronos asegurados como los obreros reciben importantes beneficios a cambio del libre ejercicio de sus derechos y prerrogativas tradicionales.  Ley Núm. 83 del 29 de octubre de 1992, Art. 1a, 11 L.P.R.A. sec. 1a.  Por un lado, el obrero renuncia al derecho de demandar a su patrono y en su lugar recibe un remedio seguro, libre de las complejidades de una acción ordinaria en daños.  Por otro lado, a cambio de esta inmunidad al patrono se le exige cumplir con ciertas obligaciones que le impone la Ley de Compensaciones por Accidentes del Trabajo.  Entre éstas se encuentra asegurar a sus empleados en el Fondo del Seguro del Estado[9] y cumplir con lo dispuesto en el Art. 5a de la ley, el cual le impone la siguiente obligación:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
> (1)  Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;
> (2)  que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
> (3)  que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)  Ley Núm. 45 del 18 de abril de 1935, Art. 5a, según enmendada, 11 L.P.R.A. sec. 7.

En numerosas ocasiones hemos tenido oportunidad de examinar distintos aspectos relacionados con el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo.  Véase, Alvira v. SK&F

---

[9] Ley Núm. 45 del 18 de abril de 1935, Art. 18, según enmendada, 11 L.P.R.A. sec. 19.

Laboratories Co., res. el 4 de abril de 1997, 142 D.P.R. ___(1997); Vélez Rodríguez v. Pueblo International Inc., res. el 18 de marzo de 1994, 135 D.P.R. ___ (1994); Torres v. Star Kist Caribe Inc., res. el 28 de enero de 1994, 134 D.P.R. ___ (1994); Carrón Lamoutte v. Compañía de Turismo, 130 D.P.R. 70 (1992); Santiago v. Kodak, 129 D.P.R. 763 (1992).

Hemos resuelto reiteradamente que "[e]l Artículo 5a establece dos tipos de protección para el obrero que sufre un accidente del trabajo y se reporta y acoge a los beneficios que ofrece la Ley de Compensaciones por Accidentes del Trabajo.  Primero, le impone al patrono el deber de reservarle al obrero por doce (12) meses el empleo en que se desempeñaba al momento de ocurrir el accidente.  En segundo lugar, el trabajador tiene derecho a que lo repongan en ese mismo empleo una vez es dado de alta por el Fondo, [si] solicita del patrono que lo repongan y si se dan las tres condiciones establecidas en dicho artículo". Santiago v. Kodak, *supra*; véase además, Torres v. Star Kist Caribe Inc., *supra* y Delgado Zayas, Apuntes para el Estudio de la Legislación Protectora del Trabajo, págs. 188-189 (1998).  Hemos resaltado de esta forma que en adición al derecho de reinstalación que provee el Art. 5a, también se le impone la obligación al patrono de reservarle el empleo al obrero lesionado o enfermo, por un periodo de 12 meses, desde la ocurrencia del accidente o enfermedad. Alvira v. SK&F Laboratories Co., *supra*; Vélez Rodríguez v. Pueblo International Inc., *supra*.

Sin embargo, el patrono en este caso argumenta que la reserva que establece el Art. 5a no es una obligación *per se* y que sólo se activa si el obrero logra satisfacer los requisitos para solicitar su reinstalación.  A su entender la ley le permite a un patrono despedir a un obrero lesionado y lo único que le requiere es reinstalarlo de éste recuperarse y solicitar reinstalación dentro de los 12 meses que se establecen en el Art. 5a.  El patrono intenta apoyar su interpretación en que el Art. 5a no provee remedio alguno para aquel obrero que es

despedido durante el periodo de reserva y no logra recuperarse a tiempo para solicitar su reinstalación conforme el artículo. No tiene razón.

Comenzamos por señalar que de ordinario, la inhabilitación de un empleado para continuar llevando a cabo su trabajo constituye una razón justificada para su despido. Torres v. Starkist Caribe, Inc. *supra.* De ahí que el propósito evidente del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo es requerirle al patrono que pase por alto dicha facultad y que reserve la plaza de su empleado por un periodo de doce (12) meses, para permitirle al empleado recuperarse. De esta forma, el Art. 5a garantiza que el obrero que sufre un accidente o enfermedad ocupacional acuda al Fondo para el tratamiento médico correspondiente sin temor a ser despedido. Carrón Lamoutte v. Compañía de Turismo, *supra.* La reserva de doce (12) meses logra que el obrero no tenga que enfrentarse a la incertidumbre indeseable de que por haber sufrido un accidente de trabajo su patrono lo despida, a la vez que promueve un ambiente de tranquilidad en el cual el obrero puede recuperarse con mayor celeridad.

Por el contrario, la interpretación del Art. 5a que propone el patrono fomenta que éste especule con el pronóstico de mejoría de sus obreros y despidan a aquellos que parezca no habrán de reponerse a tiempo para solicitar su reinstalación. De esta forma el patrono burla el efecto terapéutico que persigue la ley. Es evidente, por lo tanto que ésta no fue la interpretación deseada por el legislador.

Por otro lado, no olvidemos que nuestro ordenamiento laboral permite que el patrono contrate a otro obrero para cubrir temporeramente el puesto del lesionado mediante un contrato de empleo *bona fide* de término cierto que satisfaga lo requerido por la Sec. 185k(a) de la Ley Núm. 80, 29 L.P.R.A. Sec. 185k(a). Esta disposición facilita el que los patronos concedan las licencias reconocidas por la legislación laboral vigente.

Resolvemos por ende, que el Art. 5a le exige al patrono que reserve el empleo de un obrero lesionado, mientras continúe

inhabilitado y recibiendo tratamiento bajo el Fondo por un término de 12 meses desde la fecha del accidente de trabajo. Esta reserva existe con total independencia de si en el futuro el obrero cualifica para ser reinstalado, e impide que el obrero sea despedido. Claro está, del propio Artículo 5a surge que si el obrero es dado de alta por el Fondo antes de transcurrido el término de 12 meses, y no solicita la reinstalación conforme le exige el Art. 5a, el patrono queda liberado de su obligación de reservar el empleo.

Sin embargo, el patrono en este caso también argumenta que el Art. 5a no provee remedio alguno para el obrero que es despedido durante el periodo de reserva y no se recupera a tiempo para requerir ser reinstalado. El patrono se equivoca.

En cuanto a los remedios a concederse por una violación a las obligaciones que impone el Art. 5a el propio artículo dispone:

> "...Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante procedimiento para reclamación de salarios, establecidos en las secs. 3118 a 3132 del Título 32." 11 L.P.R.A. sec. 7.

Como hemos visto, existen varios requisitos que el obrero debe satisfacer antes de poder solicitar la reinstalación conforme el Art. 5a. Un obrero que no satisface estos requisitos, de ordinario y aunque haya sido despedido dentro del periodo de reserva, no tendrá derecho a la reinstalación ni a los salarios que hubiere devengado de haber sido reinstalado. Sin embargo éste no es el único remedio que provee el Art. 5a ante el incumplimiento del patrono con las obligaciones que éste le impone. El Art. 5a también dispone que el obrero o sus beneficiarios, podrán reclamar **todos los daños y perjuicios que le haya ocasionado el incumplimiento del patrono.**

Por lo tanto, interpretamos que el Art. 5a sí le concede un remedio al obrero que ha sido ilegalmente despedido dentro del periodo

de doce meses en que la ley le requiere a su patrono que reserve su plaza, consistente en la compensación por los daños y perjuicios que tal conducta de su patrono le ha ocasionado.[10] Como correctamente señala el Tribunal de Circuito de Apelaciones, "resultaría un contrasentido sostener que el apelado tenía derecho a que la parte apelante le reservara su plaza por doce meses a partir de su accidente, pero que el incumplimiento de dicho deber no da base a remedio alguno bajo dicho precepto porque el empleado nunca llegó a recuperarse de su incapacidad".

Por lo tanto, y conforme con el reconocido principio de interpretación legal que establece que los estatutos remediales se interpretan con liberalidad,[11] reiteramos que el Artículo 5a obliga al patrono a reservar el empleo de su obrero enfermo o lesionado por un periodo ininterrumpido de doce (12) meses, a contarse desde la fecha en que ocurre la lesión que lo inhabilita. Dicha obligación es independiente de la que le impone al patrono reinstalar a un obrero lesionado que satisfaga los requisitos que el artículo impone. El patrono que incumpla con el deber de reserva, despidiendo al obrero lesionado, le responderá por todos los daños y perjuicios que su incumplimiento produzca.

**III**

Ahora bien, la protección que ofrece el Art. 5a al obrero no es absoluta. Santiago v. Kodak, supra. En nuestra legislación laboral

---

[10] En la determinación de estos daños además de considerar los sufrimientos y angustias mentales del obrero, el foro de instancia deberá examinar si el contrato de trabajo del obrero contiene beneficios para cuando estos se accidentan. Estos beneficios perdidos, desde el momento del despido sin justa causa hasta que venza la reserva, deberán considerarse al momento de fijar los daños y perjuicios.

[11] Anteriormente hemos establecido que la Ley de Compensaciones por Accidentes del Trabajo, por ser un estatuto remediador, ha de interpretarse liberalmente a favor de aquellos a quienes intenta proteger para que se cumplan sus amplios propósitos humanitarios y de justicia social. Maisonet Felicié v. F.S.E., res. el 30 de diciembre de 1996, 142 D.P.R. ___ (1996); Vélez, Admor v. Comisión Industrial, 91 D.P.R. 480, 485; Feliciano Figueroa v. Comisión Industrial, 84 D.P.R. 196, 215 (1961); véase además, Agosto Serrano v. FSE, 132 D.P.R. 866 (1993); Beauchamp v. Holsum Bakers of P.R. 116 D.P.R. 522 (1985).

todo patrono tiene el derecho de levantar la defensa de justa causa cuando se le acusa de un despido injustificado.  Sobre este particular señala Delgado Zayas:

> [A]unque el despido de un empleado est[é] prohibido (por encontrarse en una situación protegida) si existe justa causa para despedirlo, dicha prohibición cede ante la existencia de la justa causa.  En otras palabras, en nuestra legislación la prohibición de despido rige mientras  no hay justa causa para el despido de un empleado.
> No hay legislación alguna presente, que establezca una prohibición absoluta de despido de un empleado.  La justa causa siempre permite el despido, sin que el patrono incurra en responsabilidad legal alguna por dicha acción. Delgado Zayas pag. 115, *supra.*

Por lo tanto, "[p]uede darse el caso de que un patrono descubra que un trabajador que ya ha sufrido un accidente del trabajo llevó a cabo una conducta con anterioridad a sufrir dicho accidente que es causa justificada para despedirlo y en este caso el patrono obviamente no estaría obligado a reinstalar en su puesto a dicho trabajador, pudiéndolo despedir por estos actos anteriores y no estando impedido para ello por la prohibición de la ley.  Lo que no puede hacer es despedirlo luego de sufrir el accidente o negarse a reinstalarlo en su empleo sin que haya justa causa para despedirlo".  Delgado Zayas, supra, pag. 189.

Observamos, sin embargo, que la Ley de Compensaciones por Accidentes del Trabajo no contiene una definición de lo que constituye justa causa para el despido.  Ante esta situación, y en buena hermenéutica, debemos recurrir a otras leyes *in pari materia*.  Báez García v. Coopper Laboratories Inc., 120 D.P.R. 145, 155 (1987); Beauchamp v. Holsum Bakers of P.R., 116 D.P.R. 522, 526-527 (1985). Por ende, para determinar el significado de justa causa en el Art. 5a, acudimos a las circunstancias enumeradas en el Art. 2 de la Ley Núm. 80, 29 L.P.R.A. sec. 185(b),[12] conocida comúnmente como la Ley de Despido Injustificado.

---

[12] Según el Art. 2 de la Ley Núm. 80, "se entenderá por justa causa para el despido de un empleado de un establecimiento:

Por lo tanto, concluimos que un patrono podrá despedir a un empleado inhabilitado y acogido al Fondo, durante los doce meses de reserva que establece el Art. 5a, sólo si mediase justa causa conforme ejemplificado por el Art. 2 de la Ley Núm. 80.

IV

Procede entonces analizar los hechos de este caso a la luz de los principios reseñados. La Sentencia inicial dictada en este caso fue una Sentencia Sumaria Parcial, en la cual se determinó que el obrero tenía derecho a un remedio bajo el Art. 5a. Como se sabe, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. AP. III, R. 36, permite que cualquiera de las partes en un pleito pueda solicitar que el Tribunal emita sentencia sumaria a su favor tras demostrar que no existe controversia sustancial sobre los hechos pertinentes. Así mismo hemos resuelto que la sentencia sumaria es un remedio extraordinario discrecional que sólo debe concederse cuando no hay una genuina controversia sobre hechos materiales y el Tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. <u>Audiovisual Language</u> v. <u>Sistema de Estacionamiento Natal Hermanos</u>, res. el 15 de diciembre de 1997, 144 D.P.R. ___ (1997).

La sentencia sumaria sólo debe dictarse en casos claros y cualquier duda en cuanto a si hay hechos pertinentes en controversia

---

a) Que el obrero siga un patrón de conducta impropia o desordenada.

b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

d) Cierre total, temporero o parcial de las operaciones del establecimiento.

e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

debe resolverse contra la parte que solicita la sentencia sumaria. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria.  Véase, Piñero v. A. A. A, res. el 23 de octubre de 1998, 98 TSPR 140; Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, *supra*; Medina v. M.S. & D. Química de P.R. Inc., res. el 7 de abril de 1994, 135 D.P.R. ___ (1994); Rivera et al v. Superior Packaging, Inc., et al, 132 D.P.R. 115 (1992).

Por ende, y conforme a las reglas de Procedimiento Civil, el Tribunal solamente procederá a emitir una sentencia sumaria si **a la luz de los documentos sometidos, además de los que contienen los autos**, "no hay controversia real en cuanto a ningún hecho material y como cuestión de derecho procede dictarse[...]".  Regla 26.3, 32 L.P.R.A. Ap. III, R. 36.3; Mattei Nazario v. Vélez & Asoc., res. el 7 de mayo de 1998, 98 TSPR 54; Colegio de Ingenieros v. AAA, 131 D.P.R. 755 (1992); Méndez Arocho v. El Vocero de P. R., 130 D.P.R. 867 (1992).

De la moción de sentencia sumaria parcial presentada por el obrero y de la oposición a la misma radicada por la parte demandada, surge como hecho incontrovertido, que las compañías demandadas se encontraban en un proceso de reorganización.  Partiendo de este hecho incontrovertido el obrero alega que su despido fue evidentemente injustificado ya que él tenía mayor antigüedad que otro empleado retenido por la compañía.

El Artículo 2 de la Ley Núm. 80, en su inciso (f) establece que sería justa causa para un despido "[r]educciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido".  29 L.P.R.A. sec. 185b(f).  Sin embargo, el Artículo 3 de esta ley delimita

---

No se considerará despido por justa causa  aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento." 29 L.P.R.A. sec. 185b.

la forma y manera en que deben llevarse a cabo estos despidos. Este artículo establece:

> **En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) de la sec. 185b de este título, el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional** que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional siguiéndose también el orden de antigüedad en la reposición **excepto, y en ambas situaciones, en aquellos casos en que haya una diferencia clara o inconcursa en favor de la eficiencia o capacidad de trabajadores comparados en cuyo caso prevalecerá la capacidad.** (énfasis suplido).

Como ya establecimos, los remedios que provee el Art. 5a ante un despido durante el periodo de 12 meses de reserva, sólo se activan cuando el empleado ha sido despedido sin justa causa. Entendemos por lo tanto, que para que la sentencia sumaria procediese a favor del obrero en este caso, no podía existir duda en cuanto a los siguientes hechos: 1) que se estaba llevando a cabo una reorganización en las compañías demandadas; 2) que el obrero era el empleado de más antigüedad dentro de su clasificación ocupacional y 3) que no existía otro empleado que fuese evidentemente más eficiente o capacitado que el obrero.

Como señalamos anteriormente, el obrero presentó como hecho material incontrovertido, que había sido despedido de su empleo por alegadas razones de reorganización aunque existían empleados con menos antigüedad en su misma clasificación ocupacional que fueron retenidos. Sin embargo, de los documentos ante nos surge que el patrono señaló evidencia obrante en autos indicativa de que el obrero había sido despedido conforme a los Artículos 2 y 3 de la Ley Núm. 80 entiéndase, que no le había sido honrada su antigüedad ya que, al momento de llevarse a cabo las reducciones, existía otro empleado que era más

eficiente y capacitado.[13]  El patrono alegó correctamente que debido a esta controversia de hechos no procedía el que se dictase sentencia sumaria.

En vista de que prevalecía una genuina controversia respecto a la existencia de justa causa para el despido del obrero, el foro de instancia erró al emitir la Sentencia Sumaria Parcial.  Así mismo erró el Tribunal de Circuito de Apelaciones al resolver, que procedía la sentencia sumaria basándose en que "no existe controversia que la parte apelante violó su deber de reservar la plaza del apelado, despidiéndolo apenas cinco días después de haberse éste reportado al Fondo de Seguro del Estado".  Como hemos establecido, para que procediera la sentencia sumaria en este caso se requería, además, que no existiera controversia en cuanto a la inexistencia de justa causa para el despido del obrero.  Por ende, el Tribunal de Circuito erró al resolver, partiendo de la premisa de que procedía la sentencia sumaria.

V

Por último debemos determinar si erró el Tribunal de Circuito de Apelaciones al desestimar sumariamente la reclamación del obrero de discrimen por impedimento bajo la Ley Núm. 44.  La Ley Núm. 44 fue aprobada con el fin de proteger a las personas con impedimentos físicos o mentales, para ampliar sus oportunidades de empleo y para prohibir el discrimen en el empleo contra tales personas.  Ríos v. Cidra Manufacturing Operations of P.R., res. el 15 de junio de 1998, 98 TSPR 74.  La Ley Núm. 44 fue enmendada en el 1991 con el propósito de atemperar nuestro estatuto con la Ley Pública Federal de 26 de julio de 1990, 29 U.S.C.A. secs. 706, y ss. conocida comúnmente como A.D.A. Exposición de Motivos de la Ley Núm. 105 de 20 de diciembre de 1991; Ríos v. Cidra Manufacturing Operations of P.R., supra; Rivera Flores v. Compañía ABC, res. el 15 de febrero de 1995, 138 D.P.R. ___ (1995).

---

[13] Véase Oposición a Moción en solicitud de Sentencia Sumaria Parcial y solicitando que se dicte Sentencia Sumaria a favor de la parte demandada y Anejos, presentados el 11 de abril de 1997 en los cuales se

Esta enmienda a la Ley Núm. 44 introdujo la obligación de todo patrono de proveerle acomodo razonable, en el lugar de trabajo, a las personas con impedimentos. La Ley Núm. 44 define acomodo razonable como:

> ...el ajuste lógico adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, mentales o sensoriales ejecutar o desempeñar las labores asignadas a una descripción o definición ocupacional. Incluye ajustes en el área de trabajo, construcción de facilidades físicas, adquisición de equipo especializado, proveer lectores, ayudantes conductores o interpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales en su trabajo y que no representa un esfuerzo extremadamente oneroso en términos económicos... 1 L.P.R.A. sec. 501(b)(Supl. 1998).

Para quedar cobijado por la Ley Núm. 44, y que su patrono esté obligado a brindarle acomodo razonable conforme la ley, el empleado tendrá que demostrar: primero, que es una persona con impedimento según lo define la ley, y segundo, que está cualificado para llevar a cabo las funciones básicas de ese trabajo, con o sin el acomodo razonable. Véase Ley Núm. 44 de 2 de julio de 1985 (según enmendada), 1 L.P.R.A. secs. 501 y ss. (Supl. 1998).

En el caso de autos el Tribunal Apelativo desestimó sumariamente la reclamación del obrero de discrimen por impedimento por entender que "no existe controversia real sustancial en torno a que a la fecha del despido del apelado, éste se encontraba acogido a los beneficios del Fondo del Seguro del Estado e incapacitado para llevar a cabo las funciones básicas de su trabajo, por motivo del accidente del trabajo sufrido por él el 26 de junio de 1995." Esta determinación del Tribunal de Circuito de Apelaciones es errada ya que no considera la posibilidad de que el brindarle a un obrero incapacitado tiempo para reponerse de un accidente de trabajo puede constituir un acomodo razonable. Véase, Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 CFR Pt. 1630 App.; Dockery v. North Shore Medical Center, 909 F.Supp. 1550, págs. 1555-1556 (S.D. Florida 1995).

---

hace referencia a las deposiciones del obrero y del señor Patrick McLaughlin, su supervisor.

Por esta razón entendemos que no podía dictarse sentencia sumaria desestimando la reclamación del obrero bajo la Ley Núm 44.

Por los fundamentos que anteceden, procede revocar la Sentencia del Tribunal de Circuito de Apelaciones emitida en el caso de epígrafe y devolver el caso al Tribunal de Primera Instancia. Dicho foro deberá determinar, en primer lugar, si existió justa causa para el despido del obrero. De no existir justa causa para el despido procederá resolver las alegaciones del obrero a la luz del derecho aplicable y lo aquí dispuesto.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edwin R. García Díaz

   Demandante y Recurrente

     v.                                     CC-98-34        Certiorari

Darex Puerto Rico, Inc.;
W.R. Grace & Company

   Demandado y Recurridos

SENTENCIA

San Juan, Puerto Rico, a 20 de mayo de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la Sentencia emitida por el Tribunal de Circuito de Apelaciones.

Se devuelve el caso al Tribunal de Primera Instancia para que proceda a tenor con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo