TEXTO COMPLETO DE LA SENTENCIA
En el recurso de apelación de epígrafe, la Sra. Aurea Balasquide Reina (Sra. Balasquide Reina) y otros (los apelantes) nos solicitan que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (el TPI) el 14 de mayo de 2004 y notificada el 21 de igual mes y año. A través de dicha sentencia, el TPI desestimó la demanda por daños y perjuicios incoada por los apelantes, al conceder una moción de sentencia sumaria presentada por la Sra. Ada Balasquide Moreno (la Sra. Balasquide Moreno), su *157 esposo el Sr. Alfonso Ortega y la sociedad de gananciales compuesta por ellos, la Sra. Ada Nilda Moreno González (la Sra. Moreno), su esposo el Sr. Francisco Cortés Aguayo (el Sr. Cortés) y su sociedad de gananciales (los apelados).
Los apelantes además nos solicitan que revisemos el dictamen emitido por el TPI el 12 de abril de 2004, titulado sentencia parcial, que desestimó la causa de acción de los apelantes en contra del FirstBank de Puerto Rico (el FirstBank o el Banco) fundamentada en la responsabilidad vicaria de éste por los presuntos actos del Sr. Cortés, al alegadamente utilizar información confidencial de las cuentas de los apelantes en dicho Banco.
Analizado el recurso presentado, los documentos que obran en autos y el derecho aplicable, resolvemos revocar tanto la sentencia apelada como el dictamen parcial, y devolver el caso al TPI para procedimientos ulteriores.
I
El 18 de juño de 2000, los apelantes presentaron una demanda de daños y perjuicios en contra de los apelados, la cual enmendaron con fecha de 20 de noviembre de 2001. En la misma alegaron que el 15 de julio de 1999, mientras la Sra. Balasquide Reina asistía al funeral de su hermano, José Balasquide Reina (el difunto), su sobrina, la Sra. Balasquide Moreno y la Sra. Moreno, madre de ésta y a su vez la ex-esposa del difunto, irrumpieron en su residencia sita en la Calle Generalife, número 14 de la Urbanización Park Gardens de Río Piedras. Adujeron que una vez allí, éstas se apropiaron de propiedad personal de la aludida apelante y del difunto, sustrajeron documentos y se llevaron archivos de la corporación Island Institute for Remedial Education (Island Institute) que éstos custodiaban.
Igualmente, expusieron en la demanda que la Sra. Balasquide Moreno había instado un pleito relacionado a la herencia de su difunto padre, en el cual alegó que la referida corporación era un “alter ego” de éste y que durante su vida el difunto había logrado acumular una considerable fortuna. De acuerdo con los apelantes, el difunto era una persona de escasos recursos, por lo que dicha demanda constituyó una persecución maliciosa y un abuso de derecho.
De otro lado, los apelantes alegaron que el Sr. Cortés, actual esposo de la Sra. Moreno, había presentado en el referido pleito de herencia ciertos informes y una declaración jurada a favor de la Sra. Balasquide Moreno, cuyo contenido provenía de fuentes de dudosa legalidad. Argüyeron que éste había preparado tales informes utilizando datos confidenciales de sus cuentas bancarias en el FirstBank, obtenidos con la anuencia de -la Junta de Directores del aludido Banco, mientras el Sr. Cortés fungía como vicepresidente del mismo. También adujeron que dichos informes contenían información proveniente de los documentos obtenidos por la Sra. Moreno durante la presunta entrada ilegal de ésta al hogar de la Sra. Balasquide Reina. Asimismo, esgrimieron que la mencionada declaración jurada contenía aseveraciones falsas. Finalmente, señalaron que el bufete corporativo del Banco había representado legalmente a la Sra. Balasquide Moreno desde julio de 1999 hasta el 15 de agosto de 2000, lo que reflejaba un claro conflicto de interés.
Por su parte, los apelados contestaron la demanda negando los hechos medulares de la misma. Levantaron, entre otras defensas afirmativas, que la acción estaba prescrita y que los apelantes carecían de una causa de acción que justificara la concesión de un remedio.
Luego de varios incidentes procesales, el 25 de marzo de 2002, los apelados presentaron una moción de sentencia sumaria. En esencia, alegaron que: (1) la demanda estaba prescrita; (2) que los apelados no habían actuado ilegal o ilícitamente; (3) que la demanda no configuraba una causa de acción por persecución maliciosa; (4) que la alegación de abuso de derecho incluida en la misma era una defensa y no una causa de acción; (5) que no existía controversia sobre el hecho de que el Sr. Cortés no intervino con cuenta de depositante alguno del *158 FirstBank; y (6) que éste gozaba de inmunidad por prestar declaraciones juradas en un pleito. En apoyo de su contención, incluyeron otra declaración jurada suscrita por el Sr. Cortés el 2 de marzo de 2002, en la que éste expresó:

“4. Yo era empleado de Firstbank y en momento alguno intervine con cuenta alguna de depositante o cliente alguno de dicha institución en relación a las controversias existentes en el mencionado pleito ni en ningún otro pleito. Tampoco sustraje ni he sustraído información alguna de cuenta alguna relacionada a los demandados ni a ninguna otra persona o corporación relacionada al banco. ”

El 25 de junio de 2002, los apelantes presentaron su Oposición a Solicitud de Sentencia Sumaria. Argüyeron que los hechos que dieron base a su demanda habían ocurrido el 15 de julio de 1999, por lo que su causa de acción no había prescrito. También, señalaron que existían varias controversias medulares en torno al inmueble sito en la Urb. Park Gardens, puesto que ambas partes reclamaban la titularidad del mismo. Agregaron que la declaración suscrita por la Sra. Balasquide Moreno en apoyo de su moción de sentencia sumaria era falsa y perjura. Por último, adujeron que no existía duda de que el Sr. Cortés había utilizado los documentos obtenidos ilegalmente de la casa de la apelante por su esposa en los informes preparados por éste en beneficio de la Sra. Balasquide Moreno en su pleito de herencia.
Así las cosas, el 14 de mayo de 2004, notificada el 21 de mayo de 2004, el TPI declaró con lugar la moción de sentencia sumaria de los apelados y dictó sentencia de conformidad con lo solicitado por éstos. Resolvió que la demanda estaba prescrita porque no existía controversia en torno a que los hechos ocurrieron el 14 de julio de 1999. Concluyó que no se había configurado la acción de persecución maliciosa, ya que la única persona que presentó un pleito fue la Sra. Balasquide Moreno y existía justa causa para el mismo. De otra parte, determinó que el abuso de derecho se ha concebido solamente como una defensa, por lo que los apelantes no tenían derecho a invocarlo como una causa de acción. También dispuso que el Sr. Cortés suscribió su declaración jurada en su carácter personal y no como empleado del FirstBank, por lo que no actuó incorrectamente. Finalmente, dictaminó que éste no le respondía a los apelantes, ya que en Puerto Rico existía inmunidad para la persona que prestaba una declaración jurada en un caso.
Antes de que se dictara la sentencia antes mencionada, el 22 de enero de 2004, el FirstBank presentó una Solicitud de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil y/o al Amparo de la Regla 36 de Procedimiento Civil. Adujo que tanto la demanda original como la enmendada no contenían alegación alguna respecto a que su empleado, el Sr. Cortés, había actuado a nombre del Banco. En apoyo de su contención, incluyó copia de la declaración jurada suscrita por éste el 2 de marzo de 2002 en apoyo de la moción de sentencia sumaria previamente presentada por los apelados.
A pesar de que el TPI le concedió a los apelantes plazo para oponerse a la referida moción, éstos no presentaron escrito de oposición alguno.
Así las cosas, el 12 de abril de 2004, el TPI declaró ha lugar la moción dispositiva del FirstBank y emitió “Sentencia Parcial”, a través de la cual declaró ha lugar la moción y desestimó la reclamación en contra de éste. Fundamentó su dictamen en que no se había probado que el Sr. Cortés actuara a nombre del Banco ni se presentó evidencia de que éste hubiese sustraído información directamente del FirstBank.
Por estar en desacuerdo tanto con la sentencia sumaria dictada el 14 de mayo de 2004 como con la sentencia parcial de 12 de abril de 2004, el 1 de junio de 2004, los apelantes le solicitaron al TPI que las reconsiderara y que hiciera determinaciones de hechos y conclusiones de derecho adicionales respecto a la sentencia sumaria. Esgrimieron que el pedido de desestimación del FirstBanlc había sido rechazado anteriormente por el foro de instancia. Adujeron que la declaración jurada que acompañó el FirstBanlc con su moción había sido suscrita por el Sr. Cortés casi dos años después de que renunciara a su puesto con el Banco. Añadieron que la cadena de *159 demandas alegadamente abusivas instadas por los apelados en su contra comenzó con el caso KPE-1999-1859 incoado el 20 de julio de 1999, por lo que al 18 de julio de 2000, cuando los apelantes presentaron la demanda del caso de autos, la misma no había prescrito. El TPI denegó lo solicitado por los apelantes mediante orden de 7 de junio de 2004, notificada el 9 de igual mes y año.
Inconformes, los apelantes presentaron el recurso de epígrafe el 9 de julio de 2004. En el mismo enunciaron lo siguiente:

“1. Incidió el Tribunal de Primera Instancia al determinar que la causa de acción de los demandantes ha prescrito.

2. Incidió el Tribunal de Instancia al determinar que los demandantes no exponen en su demanda hechos constitutivos de causa de acción y al determinar que en Puerto Rico no existe la causa de acción por abuso del derecho y de los procedimientos judiciales.

3. Incidió el tribunal y abuso ísic1 de su discreción al dictar sentencia sumaria desestimatoria desatendiendo los presupuestos procesales y jurisprudenciales que gobiernan la concesión de dicho remedio.

4. Incidió el tribunal al estimar incontrovertidos hechos en ausencia de prueba alguna que los sostenga y cuando, por el contrario, dichos hechos aparecen desmentidos e impugnados por prueba y documentación fehaciente e incontrovertida.

5. Incidió el tribunal al darle credibilidad a testimonios “self serving” sometidos extemporáneamente por el banco demandado, por personas no aptas ni competentes para atestiguar sobre el contenido de sus declaraciones y cuando dichos testimonios son prima facie de dudosa fiabilidad y aparecen, de otra parte, controvertidos por prueba fehaciente. ”

Transcurridos varios meses, los apelados y el FirstBank presentaron ante nos sendas mociones de desestimación. Los primeros argüyeron que este Tribunal de Apelaciones carecía de jurisdicción para entender en el recurso debido a las varias fallas de las que adolecía el escrito de apelación, tales como, la cubierta y el epígrafe incompletos, faltaban citas legales y algunos documentos. De otro lado, el Banco argumentó que la sentencia parcial emitida por el TPI no podía ser objeto de revisión, puesto que los plazos para recurrir en alzada habían ya decursado.
Atendidas las aludidas mociones, el 14 de octubre de 2004, las declaramos no ha lugar. Respecto a la primera, resolvimos que lo aducido por los apelados constituían imperfecciones formales y/o errores insustanciales que no ameritaban la desestimación, de conformidad con la Ley de la Judicatura de 2003. En cuanto a la presentada por el FirstBank, determinamos que la llamada “sentencia parcial” dictada el 12 de abril de 2004, por carecer de la frase requerida por la Regla 43.5 de Procedimiento Civil, no había adquirido finalidad. Al tenor de lo anterior, concluimos que teníamos la facultad para entender tanto en la revisión de la sentencia sumaria dictada el 14 de mayo de 2004 como en la referida sentencia parcial. Por último, le concedimos a los apelados un plazo para que presentaran sus alegatos de oposición, lo que hicieron oportunamente.
En su alegato, los apelados esgrimen, en esencia, los mismos argumentos expuestos en su solicitud de sentencia sumaria ante el TPI. En su comparecencia, el FirstBank reclama, entre otros, que la demanda incoada por los apelantes estaba prescrita y que el TPI no erró al resolver mediante sentencia sumaria la reclamación en su contra al no existir controversia de hechos alguna.
Teniendo el beneficio de las comparencia de las partes, pasamos a resolver.
*160 II
Es norma reiterada que mediante la moción de sentencia sumaria, regulada por la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, un tribunal puede disponer de un caso sin celebrar vista en su fondo en aquellas situaciones en que la parte que la solicita demuestra que no existe controversia en cuanto a los hechos esenciales alegados en la demanda y que tan sólo resta disponer de las controversias de derecho existentes. PFZ Properties, Inc. v. General Accident Insurance, 136 D.P.R. 881 (1994); Medina Morales v. Merck Sharp & Dohme, 135 D.P.R. 716 (1994); Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras, 134 D.P.R. 181 (1993); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987).
El propósito de la sentencia sumaria es aligerar la tramitación de los casos en forma justa, rápida y económica, permitiendo que se dicte sentencia cuando de los documentos surge que no existe disputa sobre un hecho esencial y sólo resta aplicar el derecho, por lo que resulta innecesario celebrar un juicio en su fondo. Rosario Ortiz v. Nationwide Insurance Co., 158 D.P.R. _ (2003), 2003 J.T.S. 34, pág. 641; González Pérez v. E.L.A., 138 D.P.R. 399 (1995); González v. Alicea, 132 D.P.R. 638 (1993); Mercado Vega v. Universidad de P. R., 128 D.P.R. 273 (1991); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986); Padín v. Rossi, 100 D.P.R. 259 (1971).
En este contexto, el tribunal debe analizar si existen o no controversias en cuanto a los hechos y que en derecho procede emitir sentencia a favor de la parte que la solicita. No cabe duda que un tribunal debe dictar sentencia sumaria a favor de la parte promovente si de los autos y de los documentos presentados en apoyo y oposición de dicha moción surge que no existe controversia alguna en cuanto a los hechos esenciales y que, como cuestión de derecho, procede que se dicte la misma a favor de la aludida parte. Sin embargo, como dicha determinación requiere la adjudicación de un litigio sin que las partes tengan la oportunidad de presentar su caso ante el tribunal, la jurisprudencia ha concebido la sentencia sumaxia como un remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad. Benitez Esquilín v. Johnson & Johnson, 158 D.P.R. _ (2002), 2002 J.T.S. 137, pág. 272; García Díaz v. Darex P.R., 148 D.P.R. 364 (1999). Además, se puede conceder cuando el promovente ha tenido una oportunidad adecuada de demostrar que el oponente no tiene derecho a que se dicte sentencia en su favor como cuestión de derecho. M.J.C.A. v. Julio E., 124 D.P.R. 910 (1989); González Pérez v. E.L.A., supra; Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983); Sucn. Meléndez v. D.A.C.O., 112 D.P.R. 86 (1982).
De otro lado, le corresponde a la paite promovida rebatir dicha moción por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerló’ñecésáriamente no significa que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión lo pone en riesgo de que ello ocurra. Corp. of Presiding Bishop CJC of IDS v. Purcell, 117 D.P.R. 714 (1987); Flores v. Municipio de Caguas, supra. Esto significa que toda duda sobre si un hecho fue controvertido, debe resolverse a favor de la parte que se opone a la moción porque en esta etapa del procedimiento el juez no debe considerar la credibilidad de los documentos.
La Regla 36.3 de las de Procedimiento Civil impone al juez que atiende una solicitud de sentencia sumaria la obligación de considerar íxo sólo las declaraciones juradas sometidas para sustentarlas o las contra declaraciones juradas de la parte contraria, sino también “las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas” amén de “todo documento admisible-en-evidencia” que obre en autos. Management Administration Services Corp. v. E.L.A., 152 D.P.R. 599, 610 (2000); Flores v. Municipio de Caguas, supra; Padín v. Rossi, supra.
Al tenor de esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, con sus respectivos anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda que no han sido *161 refutadas. En cualquiera de dichos casos, de ello ser así, el tribunal deberá denegar la solicitud de sentencia sumaria. Cuadrado v. Santiago Rodríguez, supra; Corp. of Presiding Bishop CJC of LDS v. Purcell, supra. Una vez el tribunal tiene ante sí todos los documentos, debe anaüzar los hechos en la forma más favorable a la parte que se opone a que se dicte sentencia sumaria. Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867 (1992). La existencia de duda por parte del tribunal sobre la existencia o no de una controversia de hechos en el caso bajo su consideración, derrota la moción de sentencia sumaria. Corp. Presiding Bishop CJC of LDS v. Purcell, supra. Así, “sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuentja] con la verdad de todos los hechos necesarios para poder resolver la controversia (cita de caso omitida.) Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria”. Management Administration Services Corp. v. E.L.A., supra, pág. 440.
Igualmente, el Tribunal Supremo ha enfatizado que en los casos en que existe controversia sobre aspectos subjetivos centrales, tales como establecer la intención de las partes sobre la interpretación de contratos y derivar credibilidad, no es aconsejable dictar sentencia sumaria. En estos casos, falta la claridad fáctica necesaria para despojar a un litigante de su día en corte para probar sus alegaciones. Rosario Ortiz v. Nationwide Insurance Co., supra, pág. 643. Por ello, no es aconsejable dictar sentencia sumaria cuando existen alegaciones de conducta dolosa empleada por una parte contra la otra. Id., págs. 642 a 643.
Finalmente, se ha dicho que “hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos, el Tribunal puede reunir ante sí toda la verdad de los hechos a través de ‘affidávits’ o deposiciones”. Rosario Ortiz v. Nationwide Insurance Co., supra, págs. 641-642.
Por otra parte, en nuestro sistema jurídico, la prescripción constituye una materia sustantiva y no procesal. Vega Lozada v. J. Pérez y Cía., 135 DPR 746 (1994). A su vez, los Art. 1873 al 1875 del Código Civil, 31 LPRA Sees. 5302-5304, establecen las formas en que ésta puede ser interrumpida.
Para que la prescripción extintiva surta efecto sólo es necesario el transcurso del término legal fijado por el Código Civil. Art. 1861 del Código Civil, 31 LPRA See. 5291. Esta se fundamenta en la inercia del acreedor de un derecho durante un tiempo determinado, la cual se interrumpe mediante la manifestación inequívoca de un acto de voluntad contrario al mantenimiento de la situación inerte. Galib Frangie v. El Vocero de Puerto Rico, 138 DPR 560 (1995); García Aponte et al v. ELA et al, 135 DPR 137 (1994); Zambrana Maldonado v. ELA, 129 DPR 740 (1992). En Martínez v. Sociedad de Gananciales, 145 DPR 93 (1998), el Tribunal Supremo expresó:

“El fundamento detrás de esta figura [la prescripción extintiva] es el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar el ‘señorío de las cosas’ al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones. (Citas omitidas).

La interrupción de la figura de la prescripción se basa, por tanto, en la actividad o ruptura de aquella inercia. El fundamento reconocido de interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. (Citas omitidas.)” Cita a las págs. 101-102.
No obstante lo anterior, el Art 1873 del Código Civil de Puerto Rico, 31 LPRA See 5303, dispone que “la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de deuda por el deudor”.
De otra parte, el Art. 1802 del Código Civil, 31 LPRA See. 5141, establece que “[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. Las *162 acciones encaminadas a exigir responsabilidad civil extracontractual prescriben al transcurrir un año. Art. 1868 del Código Civil, 31 LPRA See. 5298. De acuerdo a la teoría cognoscitiva del daño, imperante en nuestra jurisdicción, dicho término prescriptivo comienza a decursar desde el momento en que la víctima del daño tiene conocimiento del mismo. Myriam Vera Morales, etc. v. Dr. Alfredo Bravo Colón, 2004 J.T.S. 40, Opinión de 27 de febrero de 2004. “Por lo tanto, el término para ejercer las acciones comienza a transcurrir, no cuando se sufre el daño, sino cuando se conocen todos los elementos necesarios para poder ejercer la acción”. Padín Espinosa v. Cía. Fom. Ind., 150 DPR 403, 411 (2000). Véase además Delgado Rodríguez v. Nazario de Ferrer, 121 DPR 347, 361 (1988); Colón Prieto v. Géigel, 115 DPR 232 (1994). Así, "... no basta tener conocimiento del daño, sino que resulta imprescindible el conocer quién es el autor del mismo para dirigir la demanda contra éL ” (Énfasis en el original.) Vera v. Dr. Bravo, supra, a la pág. 740.
III
En su tercer y cuarto señalamientos de error, los apelantes cuestionan que el TPI haya resuelto el caso mediante sentencia sumaria cuando del expediente surgen claras controversias de hechos esenciales que derrotan el uso de dicho vehículo procesal.
Luego de un detenido examen de la totalidad de los documentos contenidos en el expediente, y estando en la misma posición que el TPI al evaluar dicha prueba, coincidimos con los apelantes en que la controversia de autos no podía ser dilucidada mediante el mecanismo de sentencia sumaria y, por tanto, exró dicho foro al así hacerlo. Nos explicamos.
Surge de los documentos y de las diversas alegaciones de las paites que existen entre éstas varias controversias sobre asuntos medulares. Sin ánimo de ser exhaustivos, analizaremos algunos de ellos.
No resulta del todo claro del expediente cuándo comenzó a transcurrir el término prescriptivo en el caso de autos. Los apelantes señalan en su demanda que fue el 15 de julio de 1999 cuando la Sra. Balasquide Moreno y la madre de ésta entraron, alegadamente sin autorización, a su casa de la Urb. Park Gardens. Además, indican que tal acto fue objeto de una querella que produjo que el tribunal dictara ciertas órdenes en contra de éstas los días 16 de julio y 3 de agosto de 1999, prohibiéndoles realizar actos de dominio sobre el inmueble y abstenerse de interferir con la Sra. Balasquide Reina y la corporación Island Institute.
No obstante, el TPI consideró que la fecha correcta había sido el 14 de julio de 1999, al tomar en consideración la información contenida en una querella presentada por los apelantes el 16 de julio de 1999 acorde con la Ley 140 de 23 de juño de 1974, sobre controversias y estados de derecho provisionales. 
Lo anterior refleja, sin duda, la existencia de una evidente discrepancia sobre la fecha en que ocurrieron los hechos y cuándo comenzó a decursar el plazo prescriptivo aplicable, que nos impide adquirir la certeza necesaria para determinar si la demanda está prescrita o no. Por ende, concluimos que los documentos antes mencionados no establecen, sin lugar a dudas, cuándo es que, para efectos de la controversia de autos, se entenderá comenzado el período de prescripción. Siendo la prescripción materia que requiere de un cuidadoso y ponderado examen de aspectos subjetivos, como lo es el conocimiento del daño por parte del peijudicado y quién lo causó, no era procedente resolver tal aspecto por sentencia sumaria, como lo hizo el TPI. Dichas alegaciones requieren, inexorablemente, de una evaluación de la credibilidad de las partes en una vista plenaria. Siendo así, faltaba la claridad fáctica necesaria para despojar a la parte apelante de su día en corte.
De otra parte, también se desprende del expediente la existencia de controversias en tomo a la intención de las apeladas Sra. Balasquide Moreno y su madre, la Sra. Moreno, al alegadamente entrar sin autorización en la casa de la Sra. Balasquide Reina. Asimismo, existe controversia sobre a quién pertenece dicho inmueble. Surge de los autos que los apelantes esgrimen que dicha residencia es propiedad de la Sra. Balasquide Reina, y que por tal razón, dichas personas entraron a la misma sin permiso alguno y se llevaron sus pertenencias. De la *163 misma forma, existe evidencia en el expediente a los efectos de que dicha propiedad fue vendida por el difunto y la Sra. Moreno, mientras estuvieron casados, a los Sres. Saúl Moreno Guzmán y su esposa Alicia Moreno Romero mediante la escritura Núm. 3 de 13 de enero de 1969, por lo que el difunto podría no ser ya el dueño de la propiedad. 
En cambio, de las alegaciones de los apelados y dos estudios de título obrantes en autos, se desprende lo contrario. Del estudio de título fechado 25 de abril de 1995, se colige que registralmente en ese momento, los dueños de la propiedad eran el difunto y la Sra. Moreno. El fechado 20 de julio de 1999 demuestra que éstos aún eran sus dueños también para tal fecha. 
Por otro lado, los apelados exponen que tanto la Sra. Balasquide Moreno como su madre entraron en la propiedad del difunto con la firme creencia de que dicha residencia y los documentos le pertenecían a éste. También postulan que la aludida apelante nunca vivió en esa casa, sino que era sólo una visitante, ya que su verdadera residencia radicaba en el Residencial Las Gladiolas I en Hato Rey, Puerto Rico. 
De todo lo anterior, surge con meridiana claridad que el TPI no podía dilucidar dichas controversias utilizando solamente los documentos presentados por las partes, ya que los mismos son diametralmente opuestos.
También surge del expediente que en la sentencia parcial desestimando la reclamación de los apelantes en contra del FirstBank, el TPI determinó que los alegados actos del Sr. Cortés, imputados ilegales por los apelantes, fueron para beneficio exclusivo de su hijastra, la Sra. Balasquide Moreno, en el pleito relacionado a la herencia de su padre. De igual manera, resolvió que dicho apelado nunca sustrajo información del Banco relacionada con los apelantes. Habida cuenta de ello, dicho foro concluyó que éstos no probaron que el Sr. Cortés actuara a nombre del FirstBank y tampoco que sustrajo información directamente del referido Banco con la anuencia del mismo.
Ello se fundamentó en lo aducido por los apelados respecto que toda la documentación en la cual se basó la declaración jurada suscrita por el Sr. Cortés fue obtenida legalmente. Además, indicaron que tal información les fue suministrada por los apelantes de conformidad con unos acuerdos logrados con relación a la querella presentada por éstos el 16 de julio de 1999. De igual modo, señalaron que dicha declaración se nutrió de los documentos preparados para el pleito de herencia y que fueron objeto del inventario preparado en dicho caso.
En cambio, los apelantes alegaron que el Sr. Cortés, mientras laboraba como Vicepresidente Ejecutivo de FirstBank, obtuvo información sensitiva de las cuentas y estados bancarios de ellos y de Island Institute con la anuencia de los directivos de dicha entidad bancaria. Además, adujeron que dicho apelado preparó ciertos informes con información obtenida de los récords del Banco que la Sra. Balasquide Moreno utilizó en el pleito de herencia. A la luz de lo anterior, los apelantes plantearon que el FirstBank tenía un deber legal, contractual y fiduciario hacia la protección de la privacidad de la información de sus depositantes, el cual alegadamente violó, por lo que debía responder por los actos ilegales del Sr. Cortés cuando fungía como su Vicepresidente.
Al tenor del relato anterior, existen hechos medulares en controversia que imposibilitan que se desestime sumariamente la demanda contra el FirstBank. Se desprende del mismo que el TPI incidió al resolver sumariamente que el FirstBank no tenía responsabilidad alguna por los presuntos actos del Sr. Cortés. Existiendo en el expediente prueba que refleja posiciones encontradas y no armonizables entre los apelantes, los apelados y el FirstBank, entre otros, sobre el conocimiento de los directivos de este último respecto las alegadas actuaciones del Sr. Cortés en detrimento de los apelantes, el TPI estaba impedido de resolver estas controversias por sentencia sumaria. Por ello, también erró.
*164 Conforme al análisis precedente, concluimos que incidió el TPI al emitir los dictámenes apelados en forma sumaria sin darle una oportunidad a las partes de resolver sus respectivas contenciones en una vista plenaria. Resulta claro que las controversias en este caso no podían dilucidarse únicamente a base de documentos, siendo necesario que se sometiera el caso a los rigores de un juicio plenario que, a fin de cuentas, es el mejor mecanismo par-a descubrir la verdad. Habiéndose cometido los errores números 3 y 4 señalados, resulta innecesario atender los demás errores incluidos en el recurso.
IV
Por los fundamentos expuestos, se revocan tanto la sentencia sumaria emitida el 14 de mayo de 2004 y notificada el 21 de mayo de 2004 como la sentencia parcial de 12 de abril de 2004. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones